Oscar McKinny v. The State of Florida.—Opinion of Court.

OSCAR McKINNY, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

At common law a boy under the age of fourteen years can not in point of law be guilty of an assault with intent to commit rape; and if he be under that age at the time of the alleged offense, evidence is inadmissible to show that in point of fact he could commit the offense.

Writ of Error to the Circuit Court for Clay county.

The facts in the case are stated in the opinion of the court.

*R. W.* and *W. M. Davis* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MABRY, J.:

The plaintiff in error was indicted at the spring term, A. D. 1891, of the Clay county Circuit Court for an assault upon a female child under the age of ten years, with intent feloniously and forcibly to carnally know

and abuse her, and after arraignment was convicted of said offence.

The indictment charges, omitting the formal parts, "that Oscar McKinny, of the county of Clay, and State of Florida, on the 21st day of February, A. D. 1891, in the county and State aforesaid, in and upon one Dora Lillian Remesat, a female child under the age of ten years, to wit: of the age of eight years, feloniously did make an assault with intent her, the said Dora Lillian Remesat, then and there feloniously and forcibly to carnally know and abuse, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Florida." After verdict, plaintiff in error, by his counsel, made a motion to set aside the verdict and grant a new trial. The grounds of the motion are :

1. "Because the verdict is contrary to law."

2. "Because the verdict is contrary to the evidence."

3. "Because the verdict is contrary to the charge of the court."

4. "Because the uncontradicted evidence in the case was that the defendant was not fourteen years of age at the time of the alleged offense, and yet the jury found him guilty of the offense with which he was charged."

This motion was overruled and defendant excepted.

No exceptions were taken to the charge of the court, or the admissibility of any testimony. The assignments of error here cover in substance the same points presented in the motion for new trial. The sole inquiry presented here is the sufficiency of the evidence to sustain the verdict.

The mother of the child testified for the State in substance as follows : That the accused was working for her husband, helping in his barber shop and working on his place. On the 20th day of February, A. D. 1891, the accused was at work in their garden, and about five o'clock in the evening, while witness was up stairs attending to a fretful baby, she looked out of the window into the garden, and did not see the accused at work. Witness could see from the upper window all over the garden, except down by the side of a fence nearest to the house. She knew that her daughter was in the garden with the accused, and had been playing there. She went down to see about it, and as soon as she opened the garden gate she saw her child lying flat on the ground, with her clothes up, and the accused on top of her. They were lying with their feet towards witness. As soon as the witness entered the gate, the accused jumped up and commenced to button up his pantaloons, which were unbuttoned. Witness asked the accused what he meant by doing that. He said Lillian made him do it; she had been after him all the week to do it. Witness said if she had a pistol she would kill accused, and that she would

have him arrested. She looked for something to hit accused with, and he ran away from the premises. This was in Clay county, Florida. On cross-examination witness stated that when she looked in at the gate she saw them lying on the ground near the fence and near the chicken house. The chicken house was about ten feet high, and was between the gate where she entered and where they were lying. The chicken house was joined on to the fence to the right of the gate and was on her right hand. The accused and the child were on the other side of the chicken house. The child did not get up when the accused did. She laid on the ground for a little time, and was not fretting or crying and was not hurt. Witness did not see the private parts of the accused.

J. A. Peeler testified for the State, in substance, that he was sheriff of Clay county. A warrant was placed in his hands for the arrest of Oscar McKinny, for the assault upon the little girl. He tried for two days to find the accused, but could not. He found him on Sunday night at his mother's house and arrested him.

For the defense, Georgia Cook testified that she was the mother of the accused, Oscar McKinny, and that he was not fourteen years of age; that he would be fourteen years of age on the following Tuesday, the last day of March.

Fonce Miller testified that he knew the general reputation of the accused and that it was good; he never heard anything bad of the boy.

The defendant's statement, under oath, was in substance, that he had the headache, and was lying down on the ground. Lillian came where he was, and was playing on him, and he pushed her off; he was not trying to do anything to her. He ran off because Mrs. Remesat said she was going to have him arrested.

This was in substance all of the testimony. Our statute provides that "whoever ravishes and carnally knows a female of the age of ten years or more, by force and against her will, or unlawfully or carnally knows and abuses a female child under the age of ten years, shall be punished by death, or by imprisonment in the State Penitentiary for life; and whoever assaults a female with intent to commit a rape, shall be punished by imprisonment in the State Penitentiary for any term of years or for life, or by fine not exceeding one thousand dollars." Chapter 1637, sub-chapter 3, sections 40, 41, act of 1868, McClellan's Digest, page 355, sections 36, 37. The two clauses contained in the first section of the above statute define the single offense of rape. It is committed on a female over ten years of age by having carnal knowledge of her by force and against her will, and on a female under ten years of age by unlawfully or carnally knowing and abusing her, without regard to consent. The object of our statute was to provide a punishment for rape in all cases of the violation of females of any age. Originally at common law rape was defined to be the carnal knowledge of a female, forcibly and against her will.

3 Chitty's Criminal Law, 810; 1 Russell on Crimes, 904.

It seems that it was anciently doubted whether rape could be committed upon a child under ten years of age, and hence the statute, 18 Elizabeth, Chapter 7, sec. 4, was enacted, by which it was provided "that if any person shall unlawfully and carnally know and abuse any woman-child under the age of ten years, every such unlawful and carnal knowledge shall be felony without benefit of clergy." 3 Chitty's Criminal Law, 814. This statute was not intended to create a new and different offense distinct from rape, but was designed to make the carnal knowledge and abuse of a child, under ten years, rape irrespective of consent. And we find in 1 Hale's Pleas of the Crown, 628, written after the passage of the statute 18 Elizabeth, the definition of rape to be "the carnal knowledge of any woman above the age of ten years against her will, and of a woman-child under the age of ten years with or against her will." Our statute makes it rape to unlawfully or carnally know and abuse a female child under the age of ten years. This construction has been placed upon statutes like ours. Commonwealth vs. Sugland, 4 Gray, 7; People vs. McDonald, 9 Mich., 150; State vs. Storkey, 63 N. C., 7; State vs. Johnston, 76 N. C., 209; State vs. Dancy, 83 N. C., 608. To charge, then, in an indictment under the statute an assault with intent to unlawfully and carnally know

and abuse a female child under the age of ten years is, in legal effect, to allege an assault with intent to commit a rape. The testimony of the mother of the accused (and there seems to be no contradiction in any way of it) is that he was not fourteen years old when the offense is alleged to have been committed. He lacked but a short time of arriving at the age of fourteen, still the testimony is positive that he had not arrived at this age when the offense is alleged to have been committed. A boy under the age of fourteen, by the common law rule, was presumed to be incapable of committing the crime of rape. This presumption it seems was not so much on the ground of incapacity of mind or will, but of physical impotency, and was irrebutable. Williams vs. State, 20 Fla., 777, and authorities cited. It is also the rule of the common law rule that a boy under the age of fourteen years cannot in point of law be guilty of an assault with intent to commit a rape, and if he were under that age at the time of the alleged offense, evidence is inadmissible to show that in point of fact he could commit the offense. Regina vs. Phillips, 8 Carr. & Payne, 736; Rex. vs. Eldershaw, 3 Carr. & Payne, 396; People vs. Randolph, 2 Parker's Crim. Rep., 174; *Ibid*, 213; 3 Criminal Defenses (by Lawson), 145; 1 Bishop's Criminal Law (6th Ed.), sec. 746; 2 Roscoe's Criminal Evidence, 899. It was decided in Commonwealth vs. Green, 2 Pick., 380, that a boy under the age of fourteen years may be indicted for an assault with intent to commit

rape; but this seems to be the only departure out-right from the common law rule, and it was dissented from by Parker, C. J. In Ohio and New York it has been decided that while the law presumes a boy under the age of fourteen years to be incapable of being guilty of attempting to commit the crime of rape, this presumption may be overcome by proof that in point of fact he has arrived at the age of puberty. Williams vs. State, 14 Ohio, 222; People vs. Randolph, *supra*. I think there is much good reason in the rule announced in the Ohio and New York cases. The common law rule had its origin in the nature of man and social life, environed by the then physical development of the race where established and under certain climatic conditions. The rule might become absurd in more congenial climates and under conditions of more advanced physical development. The reason of the rule, it might well be said, had ceased under such circumstances. In no case, however, that we have found, except the one in Massachusetts, has any court gone further than to hold that the presumption of incapacity where the accused is under the age of fourteen years may be rebutted by evidence showing capacity. Under these decisions the burden is on the State to show that the accused had capacity when it was shown that he was at the time under the age of fourteen. In a later case in Ohio, while the rule in the case of Williams vs. State, *supra*, was adhered to, its correctness seems to have been doubted, and it was

held that the rule would not be extended, and the burden was on the State to show capacity. Hiltabiddle vs. State, 35 Ohio St., 52. There is nothing in the testimony making it necessary for us to say whether or not the rule announced in Ohio and New York should obtain in this State. The testimony does not show the capacity of the accused, nor is there anything stated in reference to his physical development from which capacity may be deduced. On the evidence before us, our conclusion is that the conviction was wrong, and the judgment is, therefore, reversed and the cause remanded.