## PETTIT VS. MAY.

DISTRESS OF ANIMALS DAMAGE FEASANT. (1-3) *R. S.*, *ch.* 51, *construed:* "*doing damage within the enclosure;*" *when distress must be made; when owner can bring replevin.* (4) *Whether statutes or ordinances authorizing a sale of animal distrained, are valid.*

EVIDENCE. (5) *Copy of village ordinance, when admitted.* (6) *Whether statute requiring court to take judicial knowledge of municipal ordinances, is valid.*

1. Where plaintiff's horse, being in the street, was destroying the fence surrounding defendant's inclosure, he was liable to be *distrained* as "doing damage within the inclosure," under sec. 1, ch. 51, R. S.

2. *It seems* that if defendant had pursued the horse a short distance along the street in order to take him, the distress would have been lawful. But in this case the evidence shows that the animal was distrained while in the act of doing damage.

3. The statute gives the distrainor of a beast *twenty four hours* within which to apply to a J. P. for the appointment of appraisers of the damages; and if he retains custody of the beast during that time, on his own premises or in the public pound, with proper care and with no wrongful act or omission, his possession is lawful, and no action commenced against him within the twenty-four hours, to deprive him of the possession, can be maintained.

4. Whether any village ordinance, or any act of the legislature (like sec. 6, ch. 51, R. S.) which in terms authorizes a *sale* of animals distrained while doing damage, without any judicial process, is valid, *quære.*

5. Where a copy of a village ordinance, put in evidence, is not *certified* in the manner required by law, it must be objected to on that ground, and its admission against a mere general objection is not error. Otherwise, if no proof is made of the *publication* of the ordinance, where the charter requires such publication to make it valid.

6. The charter of a village (P. & L. Laws of 1870, ch. 486, sub-ch. IV, sec. 6) declares that "all courts in this state shall take judicial knowledge" of all ordinances of the village trustees, "the same as of general laws of the state." *Quære*, whether this provision is of any force.

APPEAL from the Circuit Court for *Jefferson* County.

Replevin, for a horse. Answer, 1. A general denial. 2. That the horse was taken up while running at large in the village of Fort Atkinson, contrary to the village ordinances.

3. That it was taken as an estray. 4. That it was taken while doing damage to defendant's premises. The defendant, called as a witness for the plaintiff, testified that he took the horse up about six or half past six, P. M., of the day before the action was commenced; that he knew at the time that plaintiff *had owned* the horse, and supposed that he *then owned* it; that it had been running through the street, with a halter tied round its neck, and appearing to have been let loose; that it came to witness's barnyard fence (a tight and high board fence), a two year old colt belonging to witness being then in the barnyard; that the two horses reached their noses over the top of the fence, and fought, and were "kicking the fence all to pieces;" and witness took up the horse for that reason; that he took it "right close to the fence, in the street," and that when he took it, the horse and witness's colt had their heads together; that he put the animal in his own barn, fed and watered it, and that night hunted for the pound master, but could not find him; that while so engaged he met the plaintiff, and told him what had occurred, and that he could have the horse if he would pay witness one dollar; that the damage done the fence was worth that, and witness's care of the horse a good deal more than that; that the next morning witness found the pound master, who declined to take the horse, and stated that the pound was not in a proper condition for keeping him; that witness again took the horse in the afternoon of that day to the pound master, who was then willing to take it, but when witness insisted that in that case the pound master should collect from the plaintiff a dollar for his (witness's) damages, the pound master refused to take the horse on that condition, and witness took it back to his own stable. and took care of it there; that the horse was taken from defendant by the officer, on the writ of replevin, between four and five o'clock P. M. of that day, and plaintiff had not before that time made any demand for him. Proof was also made of the value of the animal.

Pettit vs. May.

Defendant's motion for a nonsuit being denied, he introduced. in evidence, against a general objection taken by plaintiff, what purported to be a copy of an ordinance of the village of Fort Atkinson, and was entitled "ORDINANCE NUMBER SIX: To restrain the running at large of cattle, goats, swine, sheep, horses and other animals, and for other purposes." This ordinance forbade all persons owning or having in their possession any of the animals above named, to suffer or permit them to run at large in the village, under a penalty of one dollar for each animal so found running at large. It also provided for the appointment of one or more pound masters, and declared that "each and every building and inclosure provided by said village or by any pound master for the restraining and safe keeping" of animals found unlawfully running at large, should be "deemed and taken to be, for all the purposes of the ordinance, a public pound." And it further declared that it should be lawful for any officer or other person who should find any animal at large contrary to the provisions of any ordinance of said village, or any law of this state, to take such animal to any public pound of the village and give it in charge of the pound master or keeper; that the pound master should thereupon take such animal into his custody, etc., and it should not be released or discharged from his custody until the owner, or some person for him, should pay the pound master for the use of the village said penalty of one dollar, together with a pound fee of fifty cents for each such animal, and the expense of keep· ing the same, to be retained by the pound master; that it should be the duty of the pound master, within two days after receiving such animal into his custody, to advertise the same for sale, by posting notices in a manner specified, fixing the time for such sale not less than three nor more than five days from such posting; that in case the animal should not be lawfully released from the custody of the pound master before the time appointed for such sale, he should sell the same at public auction to the highest bidder, and should pay the proceeds to

the village treasurer, after reserving to himself a fee of one dollar for each animal sold, and the expense of keeping the same; that if the owner should, within six months after such sale, apply to the board of trustees therefor, he should be entitled to an order on the treasurer for the amount for which the animal was sold, after deducting the pound master's fees and the penalty of one dollar; and that such sale should divest the owner of all right and title, etc., and vest the same in the purchaser. This ordinance purported to be signed by the clerk and president of the board of village trustees; and appended to the copy put in evidence were two certificates, which, omitting the formal parts, were as follows: "I, Wm. Lohmiller, clerk of said village, do hereby certify that the foregoing ordinances were duly published in the Ft. Atkinson Herald, a newspaper published in said village, as follows: Ordinance No. 1 to No. 3, inclusive, August 5, 1870; No. 7 to No. 12, inclusive, August 12, 1870. Wm. Lohmiller, Clerk." "I do hereby certify that the above and foregoing is a correct and true copy of Ordinance No. six of the village aforesaid, of the signature of the clerk and president of said village, and of the publication of the same attached to the ordinance; that I have the care and custody of the book of ordinances and the records of said village, in which all the ordinances of said village are recorded; that I have carefully compared the foregoing copy of said Ordinance No. six, and said certificate of publication, and find the same to be a correct transcript therefrom and of all said ordinance and certificate, which said ordinance is now, and has been since the publication thereof, in force in said village. Given under my hand and the seal of said village, this 4th day of February, 1873. S. A. Craig, Village Clerk. [Seal.]"

This being all the evidence given, the court instructed the jury that the plaintiff was entitled to the possession of the horse. The jury found the value of the property, and that plaintiff was entitled to the possession thereof, and that it had been unjustly taken and was unjustly detained by defendant,

for which they awarded nominal damages. A new trial was denied; and from a judgment on the verdict defendant appealed.

*L. B. Caswell*, for appellant, argued that the taking was lawful under the village ordinance, of which the courts will take judicial knowledge (P. & L. Laws of 1870, ch. 486, sec. 6), and the action would not lie without a previous demand and refusal, unless defendant, by some act subsequent to the taking, became a trespasser *ab initio;* that his neglect to impound the horse did not have any such effect, first, because mere *nonfeasance* does not make a man a trespasser (*Hale v. Clark,* 19 Wend., 498; 20 Johns., 427; 11 Barb., 390; 1 Cow. Tr., 439, 490; Chitty's Pl., 124), and secondly, because, the pound being unfit, the horse was properly kept in defendant's barn. 5 Hurl. & Norm., 485; 45 N. H., 472; 3 id., 69. 2. That defendant had a right to distrain the horse under the statute (R. S., ch. 51, sec. 1), as "doing damage within the inclosure;" that the twenty-four hours allowed defendant by the statute for applying to a justice for an appraisal of damages, had not elapsed when the action was commenced; and that even if they had, his omission to make such application would not, under the later and better authorities, have rendered him a trespasser, but would merely have made him liable for an unlawful detainer after demand and refusal, upon the ground that by failing to comply with the statute in this respect, he had lost the remedy given him by the statute. *Barrows v. Fassett,* 36 Vt., 625; *Keith v. Bradford,* 39 id., 34. 3. That the common law as to distress is still in force in all cases not reached by the statute (13 Me., 371), and defendant had a right at the common law to distrain the horse and hold him until a tender of amends. 1 Cow. R., 79, note; 6 Mass., 94; *Rockwell v. Nearing,* 35 N. Y., 308, 309.

*Geo. W. Burchard,* with *Geo. W. Bird,* of counsel, for respondent, argued that the defendant could not justify under the village ordinance, (1) Because the ordinance authorizes the taking up of such animals only as are *suffered or permitted by their owners or possessors* to run at large, and this presupposes *knowledge*

on the part of the owner that his animal is at large ; of which knowledge there was no evidence in this case. (2) Because defendant, instead of taking the horse to one of the public pounds, as required by the ordinance, put it in his own barn, and the next day sought to have the pound keeper take it upon an illegal condition, and so became a trespasser *ab initio*, and no demand was necessary. 1 Hilliard on Torts, 105 et seq., and 488 ; 2 id., 231 ; 1 Wait's Law & Prac., 788 ; Cow. Tr., secs. 704, 705 ; 2 Johns., 191 ; 10 id., 253, 369 ; 15 id., 401. And it is immaterial that the pound was not in a fit condition, because the pound master, under the ordinance, might use any building or inclosure for that purpose, and did in fact offer to take the horse. (3) Because the ordinance was improperly admitted in evidence, the certificate of the clerk not stating (as required by Tay. Stats., ch. 137, § 98) that he had compared the copy with the original ordinance. 2. Counsel argued that the defendant could. not justify the taking under the statute, (1) Because the statute permits this proceeding only where the animal is doing damage, not *on* or *to* the inclosure, but *within* it. The word "inclosure" in the statute obviously means premises actually inclosed. *Walters v. Glats*, 29 Iowa, 437. The animals must be actually trespassing at the time they are distrained, and therefore it must appear that the party distraining had actually gone into the field where the trespass was done, before the animals got out. 1 Wait's Law & Prac., 789 ; *Clement v. Milner*, 3 Esp., 95 ; *Lindon v. Hooper*, 1 Cowp., 414 ; Cow. Tr., secs. 699 et seq. The testimony of defendant shows that the horse was captured in the street, with considerable difficulty, and therefore illegally. Having once escaped, he could not be taken or held for any damage committed before the escape. *Warring v. Cripps*, 23 Wis., 460. (2) Because, if defendant took the horse for the reason that it was running at large contrary to the village ordinance (as he alleges, and his conduct indicates), then he did not take it for the reason that it·was doing damage within the inclosure. The intention

at the time of capture should determine. By taking the animal to the pound, appraising his own damages, and otherwise, defendant caused plaintiff to believe that he had taken it up under the ordinance; and he should now be estopped from claiming that he took it *damage feasant.* 3. Counsel also contended that the common law as to distress *damage feasant*, having been altered by the statute, is abrogated (Const. of Wis., art. XIV, sec. 13); and that the common law remedy, if it ever existed anywhere for damages committed in a highway or upon uninclosed lands, did not exist in this state at the adoption of the constitution, and is not in force now. Terr. Stats. 1839, p. 117, § 1 ; 29 Iowa, 437.

DIXON, C. J. The statute (sec. 1, ch. 51, R. S. ; 1 Tay. Stats., 793, § 1) provides: "It shall be lawful for the owner or occupant of any lands to distrain all beasts doing damage within his inclosure; and when any distress shall be made of any beasts doing damage, the person distraining shall keep such beasts in some secure place on his premises or in some public pound in his town, city or village, until his damages shall be appraised; and within twenty-four hours after such distress (unless the same shall be made on Saturday, in which case, before the Tuesday morning following thereafter), he shall apply to a justice of the peace, who shall appoint three disinterested freeholders of the town to appraise the damages."

The horse of the plaintiff was in the street tearing down and destroying the defendant's fence surrounding his inclosure, at the time the defendant seized and held him as an animal *damage feasant;* and the first question to be determined is, whether the horse was liable to be distrained under such circumstances. Was the horse "doing damage within his inclosure," so as to authorize the defendant to distrain and keep him in the manner prescribed by the statute? The fence is a part of the inclosure of the owner or occupant of lands, and to injure or destroy that is, in our judgment, to do "damage

within the inclosure," as those words are used and to be understood in the statute. Unlike the statute of Vermont and perhaps those of some other states, which authorize any person to impound "any beast found in his inclosure doing damage," our statute seems to be more comprehensive, and it is unnecessary that the beast should be found in the inclosure in order to justify the distress, but suffices that it is taken doing damage therein, although itself on the outside. Such appears to be the reasonable and proper construction of the statute, and the court accordingly so holds and applies it.

It is argued that the horse was captured, not while in the act of doing the damage, but after he had escaped, and hence that the seizure was unauthorized; and *Warring v. Cripps*, 23 Wis., 460, is cited. If the defendant had pursued the horse a short distance along the street in order to take him, it is not conceived that the distress would have been unlawful. But this position is unsupported by the evidence. The inference is, that the horse was taken in the very act of doing the damage. The defendant, who was the only witness testifying upon the subject, says: "I took the horse right close to the fence, in the street." He also testifies that the taking was at the time of the fence being injured.

The horse was distrained by the defendant after six o'clock in the evening; and before that hour of the next evening, or between four and five o'clock on the next afternoon, this action of replevin was commenced before a justice of the peace, and the horse taken from the possession of the defendant by virtue of the writ. The statute gives the distrainor of beasts twenty-four hours in which to apply to a justice of the peace for the appointment of appraisers. Until that time has elapsed, the possession of the party distraining cannot be regarded as tortious or unlawful. He may keep the animal distrained so long without becoming a wrongdoer, and without liability to action on the part of the owner. He may, it is true, by some act inconsistent with his right as distrainor, become a trespass-

er before that time has expired, or afterwards a trespasser *ab initio* by some subsequent misconduct or omission. But his mere possession for the twenty-four hours, retaining custody of the beast on his own premises or in the public pound, with proper care and with no wrongful act or omission, is lawful; and no action can be instituted or maintained against him to deprive him of such possession until the twenty-four hours have expired. Such seems to be the plain intent and effect of the statute. In this case the defendant had done nothing to forfeit his right of possession, or to make himself a wrongdoer, before the twenty-four hours had elapsed, and at the time the present action was commenced. The action was prematurely brought, and cannot, therefore, be maintained; for the plaintiff, to recover at all, must do so upon his right as it existed at the time the writ of replevin was served.

The copy of the village ordinance given in evidence, so far as that was relied upon in defense, was not certified in the manner prescribed by law. But the objection to its being received in evidence was too general, and this court cannot, therefore, say that it was improperly admitted. *Evans v. Sprague*, 30 Wis., 303.

Counsel for the defendant also says that this court must take judicial notice of the ordinances of the village of Fort Atkinson, pursuant to the requirements of sec. 6, ch. IV of the charter, P. & L. Laws of 1870, ch. 486. It is difficult to perceive how the legislature can thrust knowledge into the heads of the judges in this way, or what good can come of the enactment, unless parties interested bring the ordinances or copies of them into court, and put them in evidence in the usual way.

But a difficulty with the ordinance, not overcome by the defendant, and not waived by the plaintiff, is, that it does not appear, from the certificate of the village clerk attached, to have ever been published. By section 5, chapter IV of the charter, publication was required before the ordinance could be in force.

But a still graver problem connected with the ordinance is,

whether it would have been of any constitutional validity if it had been published. According to the decision of the court of appeals in *Rockwell v Nearing*, 35 N. Y., 302, it would have been invalid ; and the same infirmity extends to sec. 6, ch. 51, R. S., above cited (1 Tay. Stats., 794, § 6), which is very similar in its provisions to the New York statute which was declared void.

*By the Court.* — Judgment reversed, and cause remanded for a new trial according to law.