## [No. 2902.]

## JEROME HALL *v.* THE STATE.

1. AGGRAVATED ASSAULT AND BATTERY—INDICTMENT—EVIDENCE.—The first count in the indictment alleged that the assault and battery was committed by an adult male upon a female. An adult is a person who has attained the full age of twenty-one years. The defendant produced the positive testimony of his father that he was not twenty-one years of age at the time of the trial. The only testimony tending to contradict this evidence was the statement of the prosecutrix, who testified that she thought the defendant was twenty-one years old, but whether this had reference to the time of the offense or that of the trial does not appear, nor did the witness testify that she knew the age of the defendant. *Held*, first, that the evidence was insufficient to support the allegation that the defendant was an adult male; and second, that the mere opinion of the State's witness was not sufficient to confute the positive testimony of the defendant's.

2. SAME—DECREPIT PERSON.—The word "decrepit," as used in Article 496 of the Penal Code, has a more comprehensive meaning than that given to it by lexicographers, and a "decrepit person" must be held to be one who is disabled, incapable or incompetent from either physical or mental weakness or defects, whether produced by age or other causes, to such an extent as to render the individual comparatively helpless in a personal conflict with one possessed of ordinary health and strength. Decrepitude may exist without the supervention of age. See the opinion for evidence *held* insufficient to support the allegation that the assaulted person was a decrepit person.

3. SAME—CHARGE OF THE COURT.—The third count in the indictment alleged that the defendant went into the house of a private family and

there committed the assault and battery. The evidence disclosed that the assault occurred in the house of the defendant's father, of whose family the defendant was a member, and of which house he was an occupant. *Held,* that the evidence was insufficient to bring the offense within the meaning of subdivision 3 of Article 496 of the Penal Code, wherefore the court did not err in omitting to instruct the jury upon that count.

APPEAL from the County Court of Grayson. Tried below before the Hon. S. D. Steedman, County Judge.

The appellant was convicted in the county court of Grayson county, Texas, under an indictment charging in substance in the first count that defendant committed an aggravated assault and battery upon the person of Jennie Hall, a female, the defendant then and there being an adult male person; the second count charging in substance that the defendant was a person of robust health and strength, and the said Jennie then and there being decrepit; and the third count charging, in substance, that defendant went into the house of a private family and there committed an assault and battery upon the said Jennie Hall.

The jury returned a verdict of guilty of aggravated assault against the defendant, and as punishment assessed against him a fine of twenty-five dollars.

Mrs. Jennie Hall was the first witness for the State. She testified that she was thirty-seven years old; that she was stepmother to the defendant, having been seven years married to his father. The defendant struck the witness twice, on the ninth day of September, 1883, in her family sitting room, in the house of her husband, situated in Grayson county, Texas. Witness did not know whether or not she struck the defendant. She struck at him with a chair because he was pushing her. Witness could not remember what the defendant said as he advanced into the room, except that he cursed her. Defendant, with his fist, struck the witness in the left eye, and then knocked her down. The witness's face swelled up and became discolored, and remained so for two or three weeks. The witness thought the defendant had reached the age of twenty-one years, and was a strong man. Witness had been in bed all day at the time, and had been sick off and on all summer.

Cross-examined, the witness stated that the room in which the difficulty took place was no more the defendant's room than it was the room of the other hired hands. The defendant's sec-

ond blow knocked the witness flat on the floor. The blow did not break the chair. Witness never curses at any time. She had never threatened the defendant, and had never called him a son of a b—h. The sitting room in which the difficulty occurred opened into a hallway, and the stair ran down opposite the sitting room door. Witness's husband, E. C. Hall, had just come into the hall, and was standing inside of the door when the witness first saw him. This was before E. C. Hall interfered. The witness's daughter, Alice Stobin, was present and saw the whole of the difficulty, but did not strike the defendant. Witness assisted in placing supper on the table, but told Mr. Hall that she would not get a warm meal.

Alice Stobin testified, for the State, that she was the thirteen-year-old daughter of the prosecutrix, Jennie Hall, and was present when the difficulty occurred. While Mrs. Hall was in the sitting room, the defendant came down stairs, stopped at the sitting room door, and cursed Mrs. Hall. He then stepped into the room and struck Mrs. Hall twice, knocking her down with the first blow. Mrs. Hall first struck the defendant with a chair. Witness's step-father, E. C. Hall, then interfered and separated the parties.

Cross-examined, the witness stated that, during the fight between her mother and the defendant, she, the witness, struck the defendant. Witness's mother struck the first blow, with the chair, and then received two blows from the defendant, the first of which felled her to the floor. At the time that the difficulty commenced the belligerant parties were standing just inside the sitting room door. E. C. Hall rushed in to separate the combatants as soon as he could after Mrs. Hall struck the first blow. Mrs. Hall's face was discolored for two weeks after the difficulty. The witness went off to school two days after the difficulty and did not return home for three weeks. As soon as the difficulty was over, witness and the prosecutrix went to the house of Mr. Hughes, a neighbor. Mrs. Hall called the defendant a "trifling puppy," but nothing else. She did not curse him.

The defendant introduced his father, E. C. Hall, who testified in substance that he was seventy years of age, and had been married to the prosecutrix about six years. The defendant, at the time of this trial, was not quite twenty-one years old, and still lived at home with the witness. Witness was present at the time of the difficulty between his son, the defendant, and

his wife. The witness, accompanied by the defendant, had been after medicine for his wife, who had been complaining during the day. They reached home about seven or eight o'clock, and witness asked his wife to prepare a little supper. She declined, and witness and defendant retired to the dining room to partake of a cold supper. While eating, the witness's wife, the prosecutrix, came into the dining room and proceeded to scold the witness. The witness talked back somewhat roughly. She then accused the defendant of telling witness tales on her, and called the defendant many ugly names. She then went up stairs and threw the defendant's trunk out of the window, and his satchel of clean clothes out at the north door. Witness then got mad himself, went up stairs and threw his wife's daughter's trunk out at the door.

Witness then got the defendant's satchel of clothing and put it on the stair steps, that he might take it up stairs. In the meantime the defendant had taken his trunk back up stairs. When he came down stairs for his satchel, he saw Mrs. Hall standing in the door, and said to her: "I don't want you to monkey with my things any more." Thereupon Mrs. Hall caught up a chair, ran up to the defendant, and struck him over the head. Witness had just entered the hall, and seeing his wife strike the defendant with the chair, ran in between them and told them to stop their row. Witness shoved his wife back into the room. The defendant was then about even with the sitting room door, or possibly a short distance inside the room. As soon as Mrs. Hall struck the defendant they both made a rush at each other, and it was at this time that the witness made his way between them. In the scramble to get at each other Mrs. Hall fell to the floor. She fell some four or five feet inside the sitting room. Each continued the effort to strike the other after the witness got between them. The witness did not know whether or not the defendant struck Mrs. Hall during the fracas. If so, the witness did not see him do so, and witness saw the whole of the fight. Mrs. Hall cursed and threatened the defendant, saying that she would kill, poison, or cut the defendant, or make him leave the house.

Being subjected to a cross-examination, this witness averred that he testified in this cause with the greatest reluctance. While the witness was doing his best to separate his wife and son and stop the fight, the girl, Alice Stober, was pounding the defendant's back with all the force of which she was capable.

If the defendant struck Mrs. Hall during the fight, the witness saw nothing of the blow. Witness was somewhat excited, and it is possible that the defendant may have struck her without witness seeing it. Defendant did not curse Mrs. Hall in witness's hearing. He said nothing more to her than "I don't want you to monkey with my things any more." The witness stopped the difficulty as soon as he could. Mrs. Hall cursed the defendant, calling him, also, a "trifling puppy" and a "son of a b—h." She was very angry. Witness was very much excited and talked very loud in his efforts to separate the parties. The stairway ran down on the west side of the hall, and the sitting room was on the east side of the hall, the door being just opposite the foot of the stairway.

A new trial was asked because "the verdict is contrary to the law and the evidence."

*Cowles & Story, J. L. Cobb* and *J. P. Cox,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. There are three counts in the indictment, each charging an aggravated assault and battery. First, that the defendant, an adult male, committed an assault and battery upon a female; second, that the defendant, a person of robust health and strength, committed an assault and battery upon a decrepit person; and third, that he went into the house of a private family and committed the assault and battery.

A general verdict of guilty of an aggravated assault was rendered upon this indictment, without specifying upon which of the three counts it was based. As to the first count, it is not sustained by, but is contrary to the evidence. An *adult* is a person who has attained the full age of twenty-one years. (*Schenault* v. *The State,* 10 Texas Ct. App., 410.) It was proved by the testimony of defendant's father positively that at the time of the trial the defendant was not twenty-one years old. There was no evidence contradicting, or tending to contradict this proof, except that of the alleged injured female, who testified that she *thought* the defendant was twenty-one years old. She did not state that she knew his age, nor does it appear that in testifying about it she had reference to the time of the alleged offense, or to the time of the trial. Besides, the mere opinion or belief of this witness cannot be regarded as evidence in con-

tradiction of the positive testimony of the defendant's father, who, it must be presumed, knew the age of his own son.

As to the second count, while the evidence might be held sufficient to establish the allegation that the defendant was a person of robust health and strength, it was not sufficient to prove that the alleged assaulted party was *decrepit.* She was not an *aged* person, being only thirty-seven years old. Mr. Webster defines "aged" as follows: "Old; having lived long; having lived almost the usual time allotted to that species of being." The usual allotted time for human beings to live, pre-scribed by revealed law, and in accord with the law of nature, is the period of three score years and ten. It is not alleged in the indictment, however, that the lady was an aged person, but that she was *decrepit*, and we must therefore direct our atten-tion to this specific allegation.

What meaning are we to give the word *decrepit?* Words used in the Penal Code, except where specially defined by law, are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed. (Penal Code, Art. 10.) Mr. Webster makes the word "decrepit" a dependant of old age; that is, according to his definition, be-. fore a person can be *decrepit* old age must have supervened upon such person. He defines the word thus: "Broken down with age; wasted or worn by the infirmities of old age; being in the last stage of decay; weakened by age." This word is not de-fined in the Code, nor do we find any definition of it in the law lexicographies. In our opinion, as used in Article 496 of the Penal Code, and as commonly understood in this country, it has a more comprehensive signification than that given it by Mr. Webster. We understand a *decrepit* person to mean one who is disabled, incapable or incompetent, from either physical or mental weakness or defects, whether produced by age or other causes, to such an extent as to render the individual compara-tively helpless in a personal conflict with one possessed of ordi-nary health and strength. We think that, within the meaning of the word as used in the Code, a person may be *decrepit* with-out being *old*; otherwise the use of the word in the Code would be tautology. It certainly was intended by the Legislature that it should signify another state or condition of the person than that of old age. Thus, where the party assaulted was a man about fifty years old, disabled by rheumatism to such an

extent that he was compelled to carry his arm in an unnatural position, and in such a manner as to render it almost if not entirely useless to him in a personal difficulty, it was held that, whilst his condition might not come technically within the meaning of the word *decrepit* as defined by Mr. Webster, yet it might with propriety be said that it fell in the measure of that word as used in common acceptation. (*Bowden* v. *The State*, 2 Texas Ct. App., 56.)

But, giving to this word its broadest meaning, we do not think that the proof in this case shows that the alleged injured person was *decrepit*. She testifies herself that she had been sick off and on during the summer, and that she had been in bed all day the day of the difficulty. It is not shown what was the character of her sickness, or what effect it had produced upon her. On the other hand, it was proved that on the evening of the difficulty, and at the time of its occurrence, she was up and going about the house; that just before she was assaulted by the defendant she had gone up stairs and thrown his trunk of clothes out of the house through a window, and had also thrown his satchel out of the house. It was further proved that before defendant struck or attempted to strike her she struck him with a chair. Considering all the testimony upon this question, we are of the opinion that it fails to show that the lady, at the time of the alleged assault upon her, was in a *decrepit* condition within the meaning of the law. Therefore the conviction cannot be sustained under the second count.

As to the third and last count, the learned judge, in his charge, did not submit the issues under it the jury. He instructed the jury as to the first and second counts only, saying nothing whatever as to the third. As this last count was not submitted to the jury, we must presume that the verdict was not based upon it, but upon one or the other, or both, of the preceding counts. We think the court very properly omitted to submit this third count to the jury, because, in our opinion, the evidence did not warrant its consideration. It was shown by the evidence that the alleged assault took place in the house of defendant's father, in the common sitting room of the family, and that the defendant at the time was an occupant of the house and a member of the family. We do not think that subdivision 3 of Article 496 of the Penal Code applies to such a case. We do not believe that it was intended to make an assault and battery aggravated when committed by a person in his own

house. We think the object of this provision is to protect private familes from the intrusion into their houses, and assaults made therein, by persons who are not members of the family, and who have no legal right to be upon the premises without the consent of the owner thereof.

We find in the record numerous bills of exceptions and assignments of error which we do not think it necessary to notice in this opinion. The questions presented are not of general importance, and are of a character that may, by proper investigation and effort on the part of the court and the counsel in the case, be avoided on another trial.

Because in our opinion the verdict of the jury is not supported by the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered April 16, 1884.