STATE OF NORTH DAKOTA, Respondent, v. A. FLATH, Applicant.

(228 N. W. 847.)

Opinion filed December 24, 1929.   Rehearing denied February 10, 1930.

*F. F. Wyckoff* and *E. T. Cuthbert,* for applicant.

*C. N. Cottingham,* for respondent.

BURR, J. Upon the refusal of the district court to issue a writ of habeas corpus the defendant applied to this court.

The state's attorney filed with a justice of the peace six criminal complaints charging the defendant with violation of the provisions of chapter 167 of the Session Laws of 1923 being section 9562a of the Supplement. This statute reads:

"Every person who shall take any indecent liberty with or on the person of any child, which act under law does not amount to rape, or attempt to commit rape, or assault, with intent to commit rape, or sodomy, or other crime against nature, shall be guilty of a felony and

shall be punished by imprisonment in the penitentiary not less than one year nor more than two years."

The defendant was held to answer to the district court. Bail was furnished, but later the bondsmen surrendered the defendant to the custody of the sheriff and no further bail has been furnished.

The complaints charge the defendant with committing this crime upon the persons of three boys aged fourteen years, seventeen years, and eighteen years respectively, and it is conceded they are of the ages stated.

The first contention of the defendant is that none of these young people is protected by the provisions of the statute quoted. It is his claim that the term "child" means any human being between the age of infancy and the age of puberty; that it is commonly recognized a male child reaches the age of puberty at fourteen; that if the legislature had not this definition in mind it would have specified an age limit or would have used the term "minor" or similarly descriptive term; that it is admitted all of the young people involved were past the age of fourteen at the time of the commission of the alleged offenses, and therefore no crime was committed, even if all of the allegations of the complaint be true.

This contention of the defendant cannot be sustained. It is true the term "child" has a variety of meanings. We speak of an infant, a child, a youth, a man, and in these senses it is quite probable the meaning the defendant seeks to attach to the term may be the popularly accepted meaning. On the other hand there are uses of the term where age has nothing whatever to do with the meaning involved. It may be a child mentioned in a will and he is that child even if he attains to his "three score years and ten." Many terms have legal definitions which vary materially from the popular definition. Under our statute the term "child" is many times synonymous with "minor." Even the term "infant" has this meaning for we speak of contracts entered into by infants and when thus used we mean minors. Chapter 23 of the Code of Criminal Procedure being §§ 11,402 to 11,428 of the Compiled Laws of 1913, in providing for juvenile courts used the term "children" in the sense of minors, saying:

"That all dependent, neglected and delinquent children under the age

of eighteen years, shall, for the purpose of this act only, be considered wards of this state. . . ." It is clear the legislature did not have in mind the period between infancy and puberty, but had in mind the age of minority, classifying all as children and limiting the provisions of this chapter to minors under eighteen years of age.

The legislature at its session in 1923 passed many child welfare laws, presented by the Children's Code Commission, and set forth in chapters 150 to 169, inclusive, of the Session Laws. An examination of these laws will show the legislature had this definition in mind though here and there, as deemed best, limiting the application of the laws to children under specified ages. For example only children over fourteen years of age are permitted to be employed in a factory, workshop, etc. (chapter 155) and by the provisions of the same chapter children between fourteen and sixteen years of age cannot be employed under certain conditions. Mothers' pensions are granted based upon the number of children under the age of sixteen (chapter 156). Chapter 158 is limited to "any minor child under the age of eighteen," and the provisions of chapter 161 are not applicable to children over eighteen years of age. Chapter 162 has no age limit nor has chapter 157 or chapter 167—the chapter under consideration. It is the contention of defendant that where age is specified the term is an extension of the age limit of children. This, however, is an incorrect interpretation. The term "child" when used in the connections mentioned, is intended to be synonymous with minor and where age limits are attached these are limitations upon the meaning of the term "child" rather than extensions. If the legislature had intended to limit the age it would undoubtedly have done so the same as it did with the other child welfare acts passed at the same session. The statute does not say "every person who shall take an indecent liberty with or on the person of any child" under the age of fourteen is guilty, as in chapter 166 of the same session laws it says every parent who deserts and fails to care for a child under the age of sixteen unable to support himself, etc., is guilty of a crime. If, in the matter of indecent liberties, the legislature had intended to limit it to children under a certain age, that is under fourteen years for example, then it would have said so the same as it said in regard to desertion and nonsupport. When a child has reached the age of

sixteen years he is presumed by the statute to be capable of taking care of himself, and failure to support him did not bring his parent within the provisions of chapter 166, nor would he be if the child were under sixteen but able to support himself. The legislature, in its discretion could have made twenty years the limit, and yet would have termed these children. It certainly could not have been the intention of the legislature, as in the juvenile law, chapter 23 of the Code of Criminal Procedure, to take care of children under the age of eighteen who were neglected, and yet permit a grosser offense against them in the form of indecent liberties if they should happen to reach the age of fourteen.

All through our statutes we find the term "child" used as synonymous with "minor." For example § 1195 makes provision for a census of all those of school age that is, those "over six and under twenty-one." At § 1251 it makes it the duty of the board of education "to establish a system of graded common schools which shall be free to all children of legal school age." Evidently all between six and twenty-one are considered "children" in this respect. Section 1300 provides for attendance at certain schools of "children not resident in such district," under certain conditions. Again this includes all those between six and twenty-one. In § 1342 it is evident that the word "child" and the word "youth" are considered to be synonymous. Here we find that those who have "control over any child of or between the ages of eight and fifteen" are required to send such child to school; and every parent, etc., "having control of a deaf, blind or feeble-minded child or youth between the ages of seven and twenty-one years of age" is required to send such child to the school provided for him; but in subdivision 1 this "child" or "youth" is merely described as a "child." The same in subdivisions 2, 3, 4 and 5 of the same statute. Section 1343 requires the public schools to be "open and accessible to all children over six and under twenty-one years of age residing in the district." Nowhere is it said that in this connection all under twenty-one shall be considered children; but says all children under twenty-one. It is clear therefore, that when we examine the statutes dealing with education the term "child" is not limited to those between infancy and puberty. Section 147 of the Constitution says the "legislative assembly shall make provision for the establishment and maintenance of a system of public

schools which shall be open to all children of the state of North Dakota," but this does not mean merely all those between infancy and puberty. It means children of such ages as are defined by the legislature.

As early as 1890 we had child labor laws upon our statute books, and through the sections of this law we find the term "child" used; but never is it said those under a certain age shall be considered children, but always children under certain ages—sometimes under fourteen, sometimes under sixteen—and everywhere implying that there are children older than these. It is evident the legislature, when treating of children in general, had in mind all children known as minors, and in the different laws applicable to these from time to time excluded children over a certain age from the benefits of that special act. When a child was over sixteen the mother's pension was not granted for his support. A child over fourteen did not have the benefit of the child welfare act regarding labor except in cases where he was attending school and then if over sixteen he did not have. A child over eighteen did not have the benefit of the act preventing the transfer of rights in children.

The applicant cites a large number of cases holding that the word "child" is to be considered in counter distinction to infant and youth. The great majority of these cases are either from Texas or based upon the Texas decisions. Among the earliest of these is the case of McGregor v. State, 4 Tex. App. 599. Herein it is said: "The word 'child' is not synonymous with the word 'minor' nor used to indicate a person within the age of legal minority." In so deciding the court had in mind the Texas statute with reference to aggravated assault and battery. The crime as defined by the Texas statute could be committed in nine different ways, the fifth of which was "when committed by an adult upon the person of a female or child, or by an adult female upon the person of a child." The court held such statute "must have been enacted for the purpose of protecting the weak, and the sex, against the strong," and this "object would not be attained by construing the word 'child,' in either case mentioned, to extend to and include any and all persons under twenty-one years of age." In the same case the court says: "Hence we conclude that the term 'child' must be construed to have

the meaning affixed to it which it has in common parlance, or as under-stood in common language." The court in construing the law gave to the word "child" the meaning which it assumed the legislature had in mind in adopting the statute. This decision was handed down in 1878. In the opinion filed the court said the person assaulted "was a youth of fourteen years of age, weighing 125 pounds, or more. If several of the witnesses are to be believed, he deserved all he got, for shameful talk about a female schoolmate." To what extent this indignation shown affected the decision and led to the reversal of the verdict is speculative, but the later decisions show a regret the precedent was established.

Appellant cites such cases as Allen v. State, 7 Tex. App. 298; Bell v. State, 18 Tex. App. 53, 51 Am. Rep. 293; Thompson v. State, 46 Tex. Crim. Rep. 412, 80 S. W. 623; Wilman v. State, 63 Tex. Crim. Rep. 623, 141 S. W. 110, which are prosecutions under the same statute, and where the court follows the same interpretation of the term.

In Bell v. State, 18 Tex. App. 53, 51 Am. Rep. 293, supra, the opinion says the court recommended to the legislature that this law on aggravated assault on a child "be amended so as to settle this question and several others that have been unnecessary sources of trouble and annoyance to the courts, and they declined to adopt the recommendation or amend the law in any respect." The bar was not satisfied with the definition the court gave, and the matter was coming up continually. However as the court had defined the term "child" in the McGregor Case, and the legislature had failed to change or amend the law, the court felt justified in adhering to the construction given.

The position in which the court was placed by thus limiting the meaning of the word "child" is manifest when the same court came to define the word "adult." In the case of Schenault v. State, 10 Tex. App. 410, the court says: "The word 'adult' as used in art. 496 of the Penal Code signifies a person who has attained the full age of twenty-one." This definition was followed in the case of George v. State, 11 Tex. App. 95 and Hall v. State, 16 Tex. Ct. App. 6, 49 Am. Rep. 824. No wonder the court was embarrassed in Bell v. State, 18 Tex. App. 53, 51 Am. Rep. 293, supra, for with the term "child" limited to the age of puberty and with "adult" classified as one who had attained his

majority there were plenty of cases where one under twenty-one would be guilty of an aggravated assault on a girl over twelve or a boy over fourteen and could not be punished under this subdivision of the statute.

This interpretation is adopted by the supreme court of Georgia in the case of Collins v. State, 97 Ga. 433, 35 L.R.A. 501, 25 S. E. 325. In this case the defendant was charged under a statute "forbidding cruelly beating a child" and it was held that a young man of about nineteen was not a child in the sense intended. The court said: "There is nothing in the language of the statute to indicate that the legislature intended to use the term in a broader sense than that in which it is ordinarily employed."

However in Stone v. State, 1 Ga. App. 292, 57 S. E. 992, it is said: "A child is a young person at any age less than maturity, but more commonly one between infancy and youth." The court cited the Georgia statutes relative to the age of children capable of committing crimes, and the one against inveigling children under eighteen years of age, and held that a girl over fourteen was under the protection of the statute against "cruelly, unreasonably and maliciously beating a child."

In the case of Paul & Fossil v. Lee, 31 Ga. App. 629, 121 S. E. 845, the term "child of tender years" was held not applicable to one more than fifteen years of age. It is clear the term "child" was determined by an age limit rather than a question of maturity. See also Barnhill v. Mt. Morgan Coal Co. (D. C.) 215 Fed. 608, 610.

The case of Blackburn v. State, 22 Ohio St. 102, 110, is cited by the applicant. This matter came before the court on an indictment for rape. Section 5 of the law under consideration describes three classes of females upon whom rape could be committed—a woman other than the daughter or sister of the defendant; a female child other than the daughter or sister of the defendant; a female child under ten years of age with her consent, by a male person over seventeen years. In the case before the court the proof showed the female was between sixteen and seventeen years of age and it was held she was a woman under this classification. The meaning given was given because as the court said

it was "peculiarly appropriate in a statute for the punishment of this crime—a crime against the person and sexual purity of the female." "Sexually and physically she may be and generally is a woman years before she becomes a woman sui juris according to the law which fixes the age of her majority." The indictment was for a rape on a woman. The defendant argued she was a "child"; but the court contrasts the two words—child and woman—and holds the sense requires this meaning, otherwise there would be no rape on a minor who was a woman.

In Garrison v. State, 15 Ala. App. 596, 74 So. 726, the court held the word "child" applicable to three girls aged respectively 13, 15 and 16 years under a statute punishing one "who unlawfully takes or decoys away any child with the intent to detain and conceal it from its parents." This statute is similar to our statute § 9609 except that in our statute it is limited to "any child under the age of 12 years." The court said: "The word 'child' or 'children' when used irrespective of parentage may denote that class of persons under the age of majority." This view is upheld in numerous cases. In Meisner v. United States (D. C.) 295 Fed. 866, 868, it is said "The word 'children' when used irrespective of parentage may denote that class of persons under the age of twenty-one years as distinguished from adults; but its ordinary meaning with respect to parentage is sons and daughters of whatever age." See also Miller v. Finegan, 26 Fla. 29, 6 L.R.A. 813, 7 So. 140; State v. Gaston, 96 Iowa, 505, 65 N. W. 416. In the case of Blackburn v. State, 22 Ohio St. 102, 110, supra, under a statute defining rape, it was held, "A female ceases to be a 'child' and becomes a woman at the age of puberty." But the law was being construed in the light of the statute defining rape.

In People v. Miller, 96 Mich. 119, 55 N. W. 675, the statute involved punished one who shall "carnally know or abuse any female child under the age of fourteen years." The court held the term "child" was not limited to a female who had reached puberty as the defendant argued. The court held it applied to all females who were under the age of fourteen. The female involved was twelve or thirteen years of age. The defendant claimed that she was no longer a child because she had attained puberty. He argued that a "female child under fourteen" meant one who had reached puberty. No matter how young, or one who

did not exceed fourteen years of age, even if puberty be not attained. The court held the term was not limited by puberty. A similar holding is that of State v. Wright, 25 Neb. 38, 40 N. W. 596. Here the statute defined the age of consent as fifteen, and the court held that the term child was not determined by puberty but was a matter of age.

Appellant cites the case of Sheffield v. Franklin, 151 Ala. 492, 12 L.R.A.(N.S.) 884, 125 Am. St. Rep. 37, 44 So. 373, 15 Ann. Cas. 90. This case, however, was a matter of adoption and it was held there that the word "child" was to be employed in the sense of relationship. This of course was the natural meaning for the case involved. However the court says: "In many senses the word imports minority, infancy, early years of life," and thus shows that there are legal senses in which the word is used as synonymous with minor.

In homestead laws granting exemption to widows and children the latter term is construed to include such children only as are minors. See Reeves v. Petty, 44 Tex. 249; Horn v. Arnold, 52 Tex. 161. In this latter case the court said, to construe this word otherwise would "lose sight of the object and purpose of this provision to give effect to the literal import of a single word."

The case of McKinny v. State, 29 Fla. 565, 30 Am. St. Rep. 140, 10 So. 732, cited by applicant is not in point. In that case one was arrested charged with assault with intent to commit rape. It was shown that he was under fourteen and was therefore conclusively presumed to be incapable of committing the crime because of his age. Of course this decision was based upon an entirely different theory. The child involved was the defendant himself, the one charged with the commission of the crime. Some states may hold those under fourteen are conclusively presumed to be incapable of committing crime. Under our statute § 9207, the conclusive presumption applies only to children under seven years of age, and places "children over the age of seven years but under the age of fourteen years" in a class of presumptively incapable, but where the presumption may be rebutted by proof. It is apparent the term means that there are children over fourteen years because it describes merely the class of children which is "over the age of seven years but under the age of fourteen years."

The authorities cited by the applicant dealing with children in their

relationship to their commission of offenses by them, such as Hale, Pl. to the Cr. 631, 8 C. N. P. 758, etc., are dealing with this same subject, and are not apropos. It will be noted that even those courts which define child as one between infancy and youth do so, not because the statute specifies years, but because of the intent of the legislature as divined by the courts.

In the case at bar the legislature did not prescribe years, therefore we are required to ascertain the intent of the legislature, but this is exactly what the Texas and other courts did, and gathered the intent from the law, the crimes defined, the statutory trend and common-sense view.

In Nelson v. Cushing, 2 Cush. 519, 593, the court in construing the terms of a will for the establishment of a free school and in the charity created the words "children" and "youth" were frequently used. The court said, dealing with definition of words where it was intended to show the word "youth" was defined as "young man": "Not much light on this subject can be obtained from dictionaries; their definitions are necessarily very concise, and do not admit of such copious definitions and illustrations, as to mark the minute shades of difference in the meaning of the same word." That is the situation here. It is true a child may be defined as a boy or girl between the age of infancy and youth; but the statutory meaning—where the statute does not define the term itself—must in many instances be gathered from the context. All through our statutes as we have shown, are numerous illustrations where the legislature, by the use of the term "child" had no thought in mind of attainment of puberty being the end of childhood. Ever since the enactment of the law providing for juvenile courts the legislative definition of "child" has always included those up to eighteen years of age, unless otherwise limited by statute. This is the first comprehensive statutory enactment for children in general and must be accepted as the legislative definition, so far as age is concerned.

Hence when the legislature of 1923 adopted a series of child welfare laws wherein special laws or portion of laws are made applicable to children under ten years of age, children under sixteen, and children under eighteen years of age we must construe the word "child" when unaccompanied by age limit as including the period from birth to

eighteen years of age, as ever since 1911 the legislature has placed such children in the category of those protected by child "welfare law," unless the same are specially limited.

The second contention of the defendant is that the "indecent liberty" prohibited by the statute is such a liberty which by its nature is connected with and related to the crime of "rape, attempt to commit rape, assault," all done with "intent to commit rape, or sodomy, or other crime against nature."

In the statute there is a comma after the word "assault," but this does not mean assault as a specified crime. It does not make the statute mean that every person "who shall take any indecent liberty with or on the person of any child . .. . with intent to commit rape or sodomy or other crime against nature," is guilty of a felony. No intent to commit any of these crimes needs to be present. The assault referred to means assault with intent to commit rape, or assault with intent to commit sodomy or assault with intent to commit a crime against nature. The statute does not mean that indecent liberties which amount to rape. or attempt to commit rape, or to an assault are excepted and all other indecent liberties taken with intent to commit rape, or sodomy or other crime against nature are to be punished, and these only. It is not the intent of the statute that the indecent liberty taken shall be related to any of these crimes specified. The plain intent of this statute is to cover all forms of indecent liberties except rape, attempt to commit rape, or assault with intent to commit rape or sodomy or crime against nature. These excepted crimes are already defined by statute and punishment therefor provided. The law is intended to be a sort of blanket statute covering all of the other indecent liberties. Rape is an indecent liberty, but because it is defined and punished elsewhere, it is excepted from the provisions of this statute. The same with the other crimes committed. After these enumerated crimes are eliminated from "indecent liberty" then the remaining indecent liberties are punishable under this statute.

The third contention of the applicant is that the acts complained of did not amount to indecent liberty because consent thereto was given. Indecent liberty is not dependent upon consent. The term is a self-

defining one. See State v. West, 39 Minn. 321, 40 N. W. 249, 8 Am. Crim. Rep. 381; State v. MacMillan, 46 Utah, 19, 145 Pac. 834. Indecent liberties mean "such liberties as the common sense of society would regard as indecent and improper." People v. Hicks, 98 Mich. 86, 90, 56 N. W. 1105. In the case of Ardery v. State, 56 Ind. 328, the court gives the words modesty and decency an ancient and honorable lineage. Frequently statutes did not punish the taking of indecent liberties in all cases; but an indecent liberty may be taken, even with consent. The liberty taken may be indecent even if consented to by one capable of giving consent, yet not punishable by statute, as the term is one of propriety, differing with the age, code of morals and generally accepted standards of society. When this statute against indecent liberties is concerned then the liberties punishable are confined to those taken with the victims mentioned in the statute. In such case the terms "indecent liberty" and "indecent assault" are convertible terms. See State v. West, 39 Minn. 321, 40 N. W. 249, 8 Am. Crim. Rep. 381, supra; State v. MacMillan, 46 Utah, 19, 145 Pac. 834, supra.

In the statute under consideration no age of consent is mentioned. It is the evident thought of the legislature that no "child" can give consent, and thus this phase of the case is determined entirely by the meaning attached to the word "child." The intent of the legislature is to punish indecent liberties taken with a child, independent of whether such child gives consent. In other words even if consent would make an indecent liberty nonpunishable the matter is set at rest in this statute because all forms of indecent liberties mentioned herein and taken with a child are punishable. The mental attitude of the child has no bearing on the case. The application for the writ is denied.

Burke, Ch. J., and Nuessle, Birdzell, and Christianson, JJ., concur.