STATE, Respondent, vs. HOFFMAN, Appellant.

*February 13—March 10, 1942.*

144

For the appellant there was a brief by *Charles A. Barnard* of Oshkosh, attorney, and *J. E. O'Brien* of Fond du Lac of counsel, and oral argument by *Mr. Barnard*.

For the respondent there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *Samuel Bluthe,* district attorney of Waushara county, and oral argument by *Mr. Platz*.

ROSENBERRY, C. J.   On April 28, 1941, Mildred Hardel, a girl thirteen years of age, at the time in the eighth grade, went into the schoolyard for the purpose of taking down the flag. The defendant, a married man thirty-one years old, drove past the school, stopped, backed up, and drove into the schoolyard. The jury having found the defendant guilty, we state the facts which appear in the evidence and tend to support the jury's findings.   He called to Mildred, inquired whether she was the teacher.   She told him she was not.   The defendant then asked Mildred her name and how old she was.   He slid over to the right side of the car toward Mildred, rolled the car window down.   She says and he admits that he asked her to go for a ride.   He engaged her in conversation and wanted to guess her weight, and told her to step closer to the car, which she did, stepping up to the running board.   He then put his hands through the car window, and with the palms of his hands felt of her breasts with an up and down motion

but without pressure for a period of about five seconds. The defendant denied touching her breasts but testified that he only put his hand on her shoulder for the purpose of guessing her weight. Mildred ran to the schoolhouse, and as she was running the defendant said "Hey come back here," but she did not answer him or stop. She told the teacher, Miss Wenge, that there was a man out in the yard after her. The teacher went to the door and talked to the defendant who was standing on the porch. There is no substantial disagreement between Miss Wenge and the defendant as to what then took place. The defendant asked her about a Rice or a Tice school. She told him there was a Rice school near Wild Rose but she had never heard of a Tice school. He then inquired whether she knew the name of the teacher. He claimed he was looking for the school being taught by Miss Cartwright. He then asked Miss Wenge what she did for excitement. He mentioned dancing and asked if she ever went to dances near Appleton or Oshkosh. He then asked her if she would go with him if he came after her some night and she said "No, I was going with someone."

"He also asked me if I would ride home with him that night and I said I was going with my girl friend."

The defendant appeared nervous and excited to Miss Wenge. After he left she returned to the schoolroom. Mildred told her the defendant had felt of her but refused to say where. About fifteen minutes later they went to Mildred's home in a car driven by a girl friend of the teacher. After the teacher and her friend left Mildred told her mother what had happened. Upon the trial the mother was permitted to testify as to what was told her.

On May 23, 1941, the defendant, accompanied by his wife and mother-in-law, called at the Hardel home with the intention of making a settlement of the case. Mr. Hardel told him he could not make settlement and that the case was in the hands of the district attorney and he would have to see him.

It was understood that Hardel would see the district attorney about it. Hardel saw the district attorney and was told that a settlement could not be made. A few days later the defendant called again and was so informed.

Sec. 351.34, Stats., under which the defendant was prosecuted, provides:

"Any male person over the age of eighteen years who shall take indecent or improper liberties with the person of a female under the age of sixteen years, with or without her consent, without intending to commit rape on such female, shall be punished," etc.

The defendant contends that the evidence produced by the state is insufficient to support a conviction for taking indecent and improper liberties, relying upon *Rice v. State* (1928), 195 Wis. 181, 217 N. W. 697. The facts in this case in no way parallel the facts in the *Rice Case* except that the prosecution in each case was under the same section of the statute.

The terms "indecent assault" and "indecent liberties" are convertible. *State v. West* (1888), 39 Minn. 321, 40 N. W. 249; *State v. Flath* (1930), 59 N. D. 121, 228 N. W. 847; *State v. Waid* (1937), 92 Utah, 297, 67 Pac. (2d) 647.

It has been said that the term "indecent liberties," when used with reference to a woman, old or young, is self-defining. *State v. Stuhr* (1939), 1 Wash. (2d) 521, 96 Pac. (2d) 479.

In a particular case whether the conduct complained of amounts to the taking of indecent liberties is largely a question for the jury. It was said in *State v. Flath, supra:*

" 'Indecent liberties' mean such liberties as the common sense of society would regard as indecent and improper," and "the liberty taken may be indecent even if consented to by one capable of giving consent, yet not punishable by statute, as the term is one of propriety, differing with the age, code of morals and generally accepted standards of society." (p. 134.)

These are matters which do not permit of precise definition or exact delimitation. "Indecency" is one thing in one gen-

eration and something else in another. It is a matter of common knowledge that fifty years ago a woman dressed in a style which now causes no comment would not have dared to frequent a public place. Had she done so she would have undoubtedly been charged with indecent exposure. In that day illustrated advertisements now common in journals of wide circulation would not have been allowed in the mails. A jury in determining what constitutes indecent liberties is confronted with a problem analogous to that of a jury required to find what constitutes ordinary care or what is the conduct of a reasonable person or what constitutes reasonable time or to make other findings which are dependent upon contemporaneous standards and codes. No doubt the jury in this case was impressed by the very unusual conduct of the defendant. He was a stranger to Mildred and Miss Wenge. By his own admission he saw a person taking down the flag. Apparently, judging from his questions he thought the flag was being taken down by the teacher of the school. When he discovered that the person taking the flag down was a pupil, a young girl thirteen years of age, he first, as he says attempted to judge her weight, found it necessary to touch her person to do that, and then tried to induce her to ride with him. After she ran into the schoolhouse he apparently thought it wiser to put up a bold front and call on the teacher. When the teacher came to the door he proceeded to make proposals to her which certainly were not of a kind ordinarily made by a perfect stranger to a young woman. His conduct on this occasion was certainly quite out of the ordinary, and the jury might well have thought it indicative of some abnormality which led him to approach women who were perfect strangers to him. While what was done by the defendant might under some circumstances seem to verge on the trivial, when all the facts are taken into consideration, it must be held that the evidence sustains the findings of the jury.

The defendant further contends that the court was in error in permitting the teacher and the mother to testify as to what Mildred told them. The mother, Lona Hardel, was asked the following questions:

"*Q*. Miss Wenge make any statement to you relative to Mildred? *A*. She did, yes, sir.

"By Mr. Barnard: So I will not make constant objections, I would like to have the record show that I object to all of this.

"By the Court: The record may so show.

"*Q*. Because of what Miss Wenge told you did you have any conversation with your daughter after Miss Wenge left? *A*. Yes, sir, I did.

"*Q*. What was that conversation? *A*. Well, I asked her and she told me she was taking down the flag and this Mr. Hoffman drove by. She did not know the man, but she saw him drive by the schoolhouse and he backed up and came in the schoolyard. She was going along and the car drove in and stopped and he asked her what her name was, how old she was, what she was doing at school and she answered his questions. Then he asked her to step up to the car and he turned the window down and felt of her. He said he wanted to guess her weight and he wanted her to get in the car and she said no. After he felt of her she became frightened and she ran in the schoolhouse and as she was running to the schoolhouse he gets out of the car and was following her and yells at her 'Hey, come back.' That was her story.

"*Q*. That is what she told you? *A*. Yes, sir.

"*Q*. When she first came home? *A*. Yes, sir. She was awfully excited.

"*Q*. Was she excited when she got home? *A*. Yes, sir, she did not eat any supper.

"*Q*. Did she tell you where Mr. Hoffman felt of her? *A*. Yes, sir.

"*Q*. What did she say? *A*. She said on her breasts."

We discover no element of complaint disclosed by this testimony. The teacher accompanied by her friend took Mildred home, told the mother what had happened, and the mother then questioned her. The teacher made the complaint, whereupon the mother examined the child. Clearly, it is no

part of the *res gestæ*. If proper objection had been made it would have been error for the court to permit the mother to testify as to the details of the transaction which Mildred had told her.

Counsel for the defendant quite evidently thought that the objections he made to Mrs. Hardel testifying to the statements made to her by Miss Wenge entitled him upon appeal to have reviewed the ruling of the court as applied to any testimony which Mrs. Hardel thereafter gave. While in some instances it may be helpful, as for instance, where testimony of a person who is not a competent witness is objected to on that ground, to permit it to be received under such a stipulation or arrangement, counsel making the objection runs a serious risk so far as having the court's ruling upon appeal is concerned. An objection to evidence or to the competency of a witness should be made in terms which apprise the court of the exact grounds upon which the objection is based. Because of the fact that the procedure followed in this case is the accepted practice in a number of courts, we give this matter extended consideration.

In *Colburn v. Chicago, St. P., M. & O. R. Co.* (1901) 109 Wis. 377, 382, 85 N. W. 354, the plaintiff offered evidence tending to establish his damages. This evidence was objected to by counsel for the defendant on the ground that it was incompetent, irrelevant, and immaterial. Plaintiff's counsel asked counsel for defendant to specify the grounds of his objection, which defendant's counsel declined to do. The court said:

"It should be remembered that the object of making objections is not for the sole purpose of enabling the objecting party to insist on error in the appellate court, but that one of the objects is to enable the counsel putting the questions to avoid error and more effectually prove his case or defense. We think the defendant's counsel should have been required to make more specific objections, if he had any; or, at least,

have been required to state the theory upon which he regarded such questions objectionable. Upon sustaining one of such objections, counsel for the plaintiff appealed to the court to indicate specifically and in such manner 'the ground and reason of sustaining the objection,' that he might 'form questions to meet the court's rulings.' But the only response of the court was that 'the objection goes to the foundation; if you will think about this matter a while, and think about putting in expert testimony on this question, I think you will see,'—to which statement and ruling the plaintiff duly excepted. We cannot sanction such a response of the court to such an appeal." The ruling of the court was held to be reversible error.

From an early day, this court has held that general objections which did not indicate the ground of inadmissibility were not sufficient to entitle the objector to raise the question on appeal if, where the error might have been corrected if properly objected to, the evidence is competent for any purpose. *State ex rel. Swenson v. Norton* (1879), 46 Wis. 332, 1 N. W. 22.

It is the general rule that an objection to the admission or exclusion of evidence must be specific and state the ground of the objection. *Bonner v. Home Ins. Co.* (1861), 13 Wis. *677. In the following cases the objections were held insufficient: *Best v. Davis* (1864), 18 Wis. *386, failure to point out in what respect a certificate to a copy of notice of *lis pendens* was insufficient. *Knapp v. Schneider* (1869), 24 Wis. 70, that certain evidence sought to be elicited on cross-examination was not proper. In *Bowman v. Van Kuren* (1871), 29 Wis. 209, that the evidence tends to prove a different defense than that stated in the answer. *Pettit v. May* (1874), 34 Wis. 666, that copy of a village ordinance is not certified in the manner required by law. *State ex rel. Swenson v. Norton* (1879), *supra,* an objection, which does not point out the respect in which votes were claimed to be illegal. *Crawford v. Witherbee* (1890), 77 Wis. 419, 46

N. W. 545, that a will was not sufficiently authenticated. *Nicolai v. Davis* (1895), 91 Wis. 370, 64 N. W. 1001, an objection that a copy of the record was not properly certified should be specifically pointed out. *Rosenberg v. Sheahan* (1912), 148 Wis. 92, 133 N. W. 645, exclusion of evidence under a general objection is not error if the evidence excluded was objectionable upon any specific ground. In *Estate of Menzner* (1926), 189 Wis. 340, 207 N. W. 703, the statement, "I object to that," does not raise competency of witness to testify to transactions with the deceased. Other cases might be cited.

Objections to the admissibility of testimony not specific enough to raise the precise question upon which the objector relies in the trial court are insufficient in this court. In *Post v. State* (1928), 197 Wis. 457, 459, 222 N. W. 224, it was held that an objection made on the ground that a search warrant was invalid because it appeared from the record that the judicial officer had before him no proper testimony on oath as a basis for its issuance came too late if made for the first time in this court. The court said:

"The general rule, however, has long been recognized that certain constitutional, as well as statutory, rights and privileges are waived unless they are asserted at the proper time and in proper manner. [Citing cases.] If such constitutional safeguards may be waived and the right to thereafter assert them wholly lost, it properly follows that a specific objection which might have been but was not timely and properly asserted before the trial court, may be deemed waived if first asserted, as in the present case, on appeal."

To the effect that a rule of evidence not invoked is waived, see 1 Wigmore, § 18, and cases cited.

The cardinal principle is that a general objection if overruled cannot avail the objector on appeal. *Cornell v. Barnes* (1870), 26 Wis. 473. See additional cases cited 1 Wigmore, § 18, subsec. 6 (c) (1). It should also be borne in mind

that a specific objection overruled will be effective only to the extent of the ground specified.

We realize that in a proper case the admission of testimony under a stipulation by virtue of which counsel is not required constantly to renew his objections is a proper practice. However, it should be entered into with some care, otherwise counsel may find himself on appeal barred from raising a point upon which he expected to rely. The record in this case discloses very plainly the vice of proceeding under a stipulation which amounts to nothing but general objection, which did not even include the hackneyed phrase, "incompetent, irrelevant, and immaterial." Even if it had included that phrase, it would not have availed the defendant in this case. The question to which the defendant's attorney objected was "Miss Wenge make any statement to you relative to Mildred?" The answer, "She did, yes, sir." This was a perfectly harmless and innocuous statement and that subject was pursued no further. The district attorney then proceeded to examine Mrs. Hardel as to her conversation with her daughter. To this no objection was made. If the daughter had complained, that fact might have properly been testified to by the mother. There is a division of authority as to whether the details stated to her by the daughter could be so testified to; if counsel wished to preserve that question for review he should have objected specifically upon that ground. The place to raise that question is on the trial and not in his brief on appeal. However, in this case we have examined the record and we are of the view that no prejudice resulted. The mother testified fairly and frankly. She made no attempt to expand the statements made to her by her daughter or to color them in any way. As a matter of fact the only substantial issue of fact in this case relates to where the defendant touched Mildred and his purpose in so doing. He testified that he touched her arm in order to estimate her weight. She says he touched her breasts with a fumbling motion. Otherwise

there is no substantial dispute in their testimony although there may be slight variances as to inconsequential details.

During the course of their deliberations the jury returned into the courtroom and desired to know if Mildred Hardel testified that she told the defendant that the teacher was in the schoolhouse at the time they were talking together in the schoolyard. The court ordered the reporter to look up the testimony. At the time this information was requested the special prosecutor and counsel for the defendant were absent from the courtroom. The reporter, after looking over Mildred Hardel's testimony, made the following statement to the jury: "There is no such testimony on the part of Mildred Hardel." It is contended that this statement on the part of the reporter was improper and prejudicial because it did not fairly represent the testimony given by Mildred Hardel on that particular point. It is argued that the jury should have been advised that that particular question as to whether she told Hoffman that the teacher was in the schoolhouse was not asked and no such answer was given.

The foreman asked the following question: "There is one question the jury don't understand, and that is, 'Did Mildred Hardel testify she told the defendant the teacher was in the schoolhouse at the time they were talking together in the schoolyard?'" We fail to see in what particular the answer made by the reporter, who was directed to look up the evidence, was in any way misleading or not responsive to the question asked by the foreman of the jury. There is no dispute but that the answer made by the reporter was correct in every particular. She neither volunteered the statement that the teacher was in the schoolhouse nor did the defendant inquire of her in regard to it. The jury probably made the inquiry because of a statement made by the defendant. The defendant testified that after he put his hand on her shoulder, he said to Mildred, "After I see the teacher, I will drive you home if you are going home." From this it is evident that

he knew the teacher was in the schoolhouse and it was this fact that attracted the attention of the jury and about which the jury wished further enlightenment. The evidence does not disclose how the defendant discovered that the teacher was in the schoolhouse. He no doubt assumed it from the fact that the flag was being taken in by a pupil.

*By the Court.*—The judgment appealed from is affirmed.