JOE SISSOM

*v.*

STATE OF TENNESSEE.

360 S.W.2d 227.

(*Nashville,* December Term, 1961.)

Opinion filed September 7, 1962.

CHARLES HAMPTON WHITE, Nashville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, LYLE REID, Assistant Attorney General, Nashville, for the State.

MR. SPECIAL JUSTICE TOMLINSON delivered the opinion of the Court.

Sissom's appeal is from the action of the Trial Judge in overruling his motion for a new trial and upholding the verdict of the jury convicting him of assault and battery upon a girl five (5) years of age ''with the feloni-

ous intent then and there to unlawfully sexually molest or fondle her, but with no intent to carnally know her''. Punishment was fixed at a period of confinement in the penitentiary for not less than one nor more than five years. The Statute under which he was convicted was enacted in 1961 and is carried at sec. 39-606 T.C.A. Supplement.

█ Inasmuch as a new trial must be granted, it is not dicta to get out of the way the constitutional question which is seriously advanced in behalf of the defendant, Sissom, in re this 1961 statute. *Brummitt Tire Co. v. Sinclair Refining Co.*, 18 Tenn.App. 270, 283-284, 75 S.W.2d 1022. That insistence is that this statute is ''so vague, ambiguous and indefinite'' that a conviction thereof deprives the defendant of his liberty in violation of the ''law of the land'' requirement of Article 1, Section 7 of the State Constitution and the ''due process of law'' requirement of the Fourteenth Amendment to the Federal Constitution.

█ The language of this 1961 statute, in so far as here pertinent, is that ''any person who shall commit an assault and battery upon any female under the age of twelve (12) years with the intent to unlawfully sexually molest or fondle her, but with no intent to carnally know her * * * shall on conviction for the first offense be punished by * * *''. etc. The expression said to be unconstitutionally vague and remote is ''sexually molest or fondle''.

Volume 27, page 669 of Words and Phrases, citing the California case of *People v. Carskaddon,* 170 Cal.App.2d 45, 338 P.2d 201, 203, defines molestation of a child within the meaning of the statute as follows:

" '* * * and if his conduct "is so lewd or obscene that the normal persons would unhesitatingly be irritated by it, such conduct would 'annoy or molest' within the purview of" the statute.' "

*Brooks v. State,* 187 Tenn. 67, 76, 213 S.W.2d 7, 11, accepts as a legal definition of "moral turpitude" this:

" 'An act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellowmen or to society in general, contrary to the accepted rule or right and duty between man and man.' "

That definition of moral turpitude can well fall within the definition of sexual molestation of a girl under twelve (12) years of age. The word "sexually fondle", as used in the statute carries, for all practical purposes, the same meaning.

■ It is argued that to pat a little girl on the head or to take hold of her arm in an affectionate manner or other like acts, however innocently done, might be regarded by some as a sexual molestation or fondling. This argument does not appeal to the Court as being founded on reason.

On the other hand, the physical act of a male old enough to know right from wrong in, for instance, placing his hand under the panties of a little girl, or his hand under her clothes or on her breast, is an act which every normal person old enough to know about sexual matters would instinctly regard as an act of baseness, vileness, or depravity so lewd or obscene that they, as normal persons, would unhesitatingly be irritated by it and would recognize it as a sexual molesting or fondling,

and so intended. The Court thinks that no person old enough to know about "birds and bees" would fail to recognize physical acts which in spirit and intent are acts of sexual molestation or fondling when imposed upon a little girl. It concludes the 1961 statute to be a valid enactment.

On the occasion in question the defendant was in his car parked on the north side of a given street, and facing west. Directly across the street, and some sixty-five (65) feet from the automobile, were the homes of Roy Hilton and James Stevens. Each was sitting with his wife on his porch, which faced north. Each testified. Neither wife did. The testimony of each is that the defendant was sitting in the driver's seat of his automobile. Hilton says that the left door of the car was closed. Stevens says that it was open.

Hilton testifies that he first observed the little girl sitting in defendant's lap while pretending to be driving the automobile. Her hand was on the steering wheel; that she stood on defendant's lap and he observed that the defendant had his hand on her stomach and thighs; that after watching this for about ten minutes he directed his wife to call the mother of the little girl.

Stevens says that he observed the little girl "wearing a full dress" in the lap of the defendant; that he saw defendant put his hand on her chest and stomach for a period of approximately one hour and during this period he saw the child sitting across his lap with "her feet hanging down by the open car door"; that while she was in this position defendant put his hand inside her panties "and kept his hand there for a period of approximately ten minutes". He explained his failure to go out

561

and protest this conduct saying he was afraid he would "beat the hell out of" the defendant. He added that he had seen the defendant place his hands on children before.

Stinnett, the arresting officer, testified that while he was taking the defendant to police headquarters three days after the above alleged act defendant admitted placing "his hands on the chest" of this child while she was in the car and "that he sometimes had a desire to place his hands on small children", and that he asked this officer "to help him".

The defendant, a fifty-eight year old man, admits that the little girl was in his car that afternoon as it was parked at the place mentioned and was awaiting the return of a nearby resident. He admits that the little girl was in his lap, that she stood in his lap while pretending to drive the automobile; that he kept her from falling by placing his hands around her waist; that when she wanted to apply the brakes he held her down on his lap so that her feet could touch the peddles and placed his hands on her thighs in order to assist her in this play. He denies that he placed his hands under the panties and asserts that she was "wearing a tight fitting two piece sun suit". He disclaimed any intentions in the acts he did other than to assist her in her play. The other children were in the rear seat during this time.

A twelve year old girl named Loma Smartt and a fourteen year old boy named Johnny Smartt say that they passed the car, observed the little girl standing in his lap laughing with their brother and another little girl on the back seat. She observed that the child was "wearing a tight fitting two piece sun suit"; that as she returned from the store to which she was going she observed the

little girl sitting in his lap pretending to drive the car and defendant was holding her by "placing his hands around her waist"; that she saw nothing wrong in his conduct; that all the doors of the car were closed on both occasions that she passed the car.

Johnny Smartt said that on previous occasions defendant had driven him and other boys to a movie and on the afternoon in question he saw the father of this infant strike the defendant and that he "did not think it was right" for him "to be molesting defendant".

It is clear from this narration of the evidence that a jury question was made and that the answer of the jury to that question, whether in favor of the State or the defendant, could not be properly regarded as capricious. After the noon recess the State recalled the defendant to the stand over the objection of defendant who excepted to the Court's overruling that objection. Whereupon, according to the bill of exceptions, the defendant further testified as follows:

"That in 1957 he had been indicted for the offense of assault with intent to ravish, but had been convicted of assault and battery and fined $50.00. That the prosecutrix was the parent of a small girl whom he had taken to a movie theater. That he did not serve a day in jail or pay a cent of the fine and that the case was 'dropped' or retired. That he had not bothered any children since 1957 as he was not guilty of that offense and was fearful that he would get into trouble again because of his love for children."

This testimony has given this Court much concern as to what disposition it should make of the case.

It does not affirmatively appear that the defendant objected to the testimony, but only objected to the defendant being recalled. However, the bill of exceptions is in narrative form, prepared by a Court appointed attorney who has done a very good job for this defendant who was unable to employ counsel; presumably, therefore, unable to have a stenographic report of the evidence.

It is hardly probable, however, that the defendant would have given the foregoing testimony if he had not been asked by the District Attorney whether in 1957 "he had been indicted for the offense of assault with intent to ravish". Further examination of this narrative recitation of his testimony discloses that there was involved in that 1957 case "a small girl whom he had taken to a movie theater". While the defendant's testimony is that he was convicted of assault and battery but did not serve any time or pay any fine and "that the case was 'dropped' or retired", it is a fact that there is attached to defendant's motion for a new trial in the 1957 case a certified copy of the record. Therein it is shown that in those cases a new trial was granted Sissom and that the case was placed on the retired docket by consent of all parties.

Since a motion for a new trial is only a pleading it is doubtful whether the foregoing certified copy of the 1957 proceedings is really in evidence, but it is part of that which has given this Court much concern as to what to do with this case.

■ There is no doubt but that the evidence placed before the jury by the foregoing testimony was that in 1957 the defendant was indicted and put to trial by reason of the same offense which he is charged in this in-

dictment with having committed. All must agree that such testimony in this particular case was very prejudicial to defendant. Prejudice alone is insufficient to entitle him to a new trial. The evidence must likewise have been incompetent.

In the 1957 case the defendant stands only indicted, but not convicted. In the case of *Brooks v. State,* 187 Tenn. 67, 77, 213 S.W.2d 7, 11, and heretofore mentioned, this Court, after quoting from Arkansas and New York cases, held that "when a defendant takes the stand in his own behalf, he may not be cross examined about pending indictments against himself, * * *." The foregoing testimony was incompetent, therefore, as well as prejudicial.

It must be presumed that District Attorney and his assistants are aware of this well recognized rule. At least, they should be. When such an officer, therefore, in spite of the incompetency of such evidence, causes it to be placed before the jury, and the Trial Judge does not reprimand this public officer nor gives the jury proper instructions in an effort to offset its devastating effects, this Court, when the testimony is prejudicial, is compelled to only one course; towit, grant a new trial.

The judgment of the Trial Court will be set aside, a new trial will be granted, and the cause remanded for that purpose. The State will be taxed with all costs of this appeal.