William SORENSON, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 5118.

Supreme Court of Wyoming.

Dec. 27, 1979.

W. Keith Goody, Asst. Public Defender, Jackson, appeared on the brief and in oral argument on behalf of appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division and Richard Scott Rideout, Asst. Atty. Gen., appeared on the brief, and Mr. Rideout appeared in oral argument on behalf of appellee.

Before RAPER, C. J., and McCLIN-TOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

This is an appeal by appellant-defendant from conviction, judgment and sentence wherein he was found guilty of knowingly taking immodest, immoral and indecent liberties with a child in violation of § 14–2–112, W.S.1977 (recodified to § 14–3–105, W.S.1977), and was sentenced to one to four years imprisonment. In addition, the trial court stated that " * * * it is the intention of the Court that terms of parole if and when given be such that the Defendant be required to undergo psychiatric treatment at appropriate facilities and that such conditions [sic] be mandatory under the terms of probation."

Appellant presents two issues in his appeal: (1) whether or not § 14–3–105, W.S. 1977, under which he was convicted, is unconstitutionally vague; and (2) whether or not the court erred in requiring appellant to undergo psychiatric treatment as a condition of parole.

We do not find the statute to be unconstitutional, but we find that the trial court lacked power to impose a parole condition. Accordingly, we affirm the conviction and remand the matter for resentence.

Appellant was performing services as an electrician on the home of the parents of a twelve-year-old girl. He asked her if she would like to see a baby robin. While she was observing it through a rear window, he began tickling her. Then he began to rub her breasts on the outside of her clothing; he then began unbuttoning her shirt and tried to put his hand inside, but she blocked his arm. He asked if she would let him do it again sometime, and he said, "you won't tell anybody, will you?" Appellant and the girl were alone in the house at the time.

After appellant entered pleas of not guilty and not guilty by reason of mental illness, the court ordered that a mental and physical examination be conducted of appellant at the Wyoming State Hospital. Appellant notes that the examination resulted in a finding that appellant was "sane."

## CONSTITUTIONALITY OF § 14–3–105, W.S.1977

█ There is a strong presumption in favor of the constitutionality of a statute. *Budd v. Bishop,* Wyo., 543 P.2d 368 (1975).

As reflected in the following quotations, vagueness may make a statute unconstitutional,[1] and the efforts of the courts to set the standard by which such can be gauged is indicated in the emphasized portions of the following:

"1. The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well-established element of the guarantee of due process of law.

"2. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.

"3. All are entitled to be informed as to what the state commands or forbids.

"4. A statute which either forbids or requires the doing of an act in *terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application* violates the first essential of due process of law.

"5. The constitutional guarantee of equal rights under the law (see Art. 1, §§ 2 and 3, Wyoming Constitution) will not tolerate a criminal law so lacking in definition that each defendant is left to the vagaries of individual judges and juries." (Emphasis supplied.) *State v. Gallegos,* Wyo., 384 P.2d 967, 968 (1963); and *Sanchez v. State,* Wyo., 567 P.2d 270, 274 (1977).

"It is settled that, as a matter of due process, a criminal statute that 'fails to *give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,*' *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954), or is so indefinite that '*it encourages arbitrary and erratic arrests and convictions,*' *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), is void for vagueness. See generally *Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972). * * *" (Emphasis supplied.) *Colautti v. Franklin,* 439 U.S. 379, 390, 99 S.Ct. 675, 683, 58 L.Ed.2d 596 (1979).

"* * * [T]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.' *Robinson v. United States,* 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid. Cf. *Nash v. United States,* 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232 (1913); *United States v. National Dairy Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). All the Due Process Clause requires is that the law give *sufficient warning that men may conduct themselves so as to avoid that which is forbidden.*" (Emphasis supplied and footnote omitted.) *Rose v. Locke,* 423 U.S. 48, 49–50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975).

"* * * This Court * * * has consistently held that lack of precision is not itself offensive to the requirements of due process. ' * * * [T]he Constitution does not require impossible standards'; all that is required is that the language '*conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *.*' *United States v. Petrillo,* 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877. * * *" (Emphasis supplied.) *Roth v. United States,* 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957).

---

**1.** Although legislation must of necessity often use words of a general nature and need not be unduly precise, the questions of vagueness in the area in which we are here concerned could be reduced by more specificity in the language of the enactment.

 We turn, then, to § 14–3–105, W.S. 1977, to determine if it sets forth the acts or conduct required or forbidden with reasonable certainty and in a fashion whereby a person of ordinary intelligence is given fair notice that his contemplated conduct is forbidden. " * * * [V]agueness challenges to statutes which do not involve First Amendment freedoms [2] must be examined in the light of the facts of the case at hand. * * * " *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975); *United States v. National Dairy Products Corp.,* 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963).

Section 14–3–105, W.S.1977, provides:

"Any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony, and upon conviction shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both."

Appellant contends the statute to be unconstitutionally vague because:

"Immoral, immodest, and indecent are words of general import and broad application. They are not self-defining and their best use is found in the subjective. Yet it is this proneness to subjective definition that exposes this law to objection. It is incumbent upon the legislature to provide the public with laws sufficiently defined so as not to deceive the common mind. * * * "

If the three words "immoral, immodest and indecent," standing alone, were our only consideration, we might agree with appellant. Their meanings to each of several persons of ordinary intelligence may differ to a point wherein it could not be said that the conduct required or forbidden is set forth with reasonable certainty. On the other hand, strict application of the definitions of the words [3] could lead to the conclusion that a person of ordinary intelligence would know that conduct such as fondling the breast of a twelve-year-old child is proscribed by them and is clearly prohibited by the "standard of morality" of this society. See *Sissom v. State,* 210 Tenn. 556, 360 S.W.2d 227 (1962); *State v. Minns,* 80 N.M. 269, 454 P.2d 355 (1969).

 In any event, we need not consider the three words on their own connotation as suggested by appellant. They are accompanied in the statute by the words "liberties" and "child" which narrow down and designate with reasonable certainty the acts and conduct required or forbidden. "Liberties" are such as common sense of society would regard as indecent and improper. *People v. Healy,* 265 Mich. 317, 251 N.W. 393 (1933). "Indecent liberties" is self-defining. *State v. Stuhr,* 1 Wash.2d 521, 96 P.2d 479 (1939); *State v. Holte,* N.D., 87 N.W.2d 47 (1957); *State v. Hoffman,* 240 Wis. 142, 2 N.W.2d 707 (1942); *State v. Kunz,* 90 Minn. 526, 97 N.W. 131 (1903); *State v. MacMillan,* 46 Utah 19, 145 P. 833 (1915). "Indecent liberties" and "indecent assault" are convertible terms. *State v. MacMillan,* supra; *State v. West,* 39 Minn. 321, 40 N.W. 249 (1888); *State v. Waid,* 92 Utah 297, 67 P.2d 647 (1937); *State v. Flath,* 59 N.D. 121, 228 N.W. 847 (1929); *State v. Hoffman,* supra.

---

**2.** Statutes dealing with First Amendment rights require closer examination. *Ashton v. Kentucky,* 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966); *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *United States v. Mazurie* (infra).

**3.** The words are defined in Webster's Third New International Dictionary (1968) as:

"Immoral—not moral: inconsistent with purity or good morals: contrary to conscience or moral law: * * * *broadly* * * * in

conflict with generally or traditionally held moral principles. * * * "

"Immodest—lacking or deficient in modesty * * * b: deficient in sexual modesty: not conforming to the sexual mores of a particular time or place * * * ."

"Indecent—1. not decent * * * b: not conforming to generally accepted standards of morality: tending toward or being in fact something generally viewed as morally indelicate or improper or offensive: being or tending to be obscene. * * * "

Accordingly, the statute is not unconstitutionally vague.

■ Beyond that, a person of ordinary intelligence can weigh his contemplated conduct against a prohibition of taking immodest, immoral or indecent liberties or assault against a child and know whether or not such contemplated conduct is proscribed by it. Appellant's inquiry to the twelve-year-old girl: "you won't tell anybody, will you?" reflects recognition that his act of rubbing her breasts on the outside of her clothes and his attempt to unbutton her shirt were a taking of "immodest, immoral or indecent liberties with any child" as forbidden by § 14–3–105, W.S.1977.

In speaking of a statute using the same terms, the Colorado Supreme Court said: " * * * when we take into consideration that the purpose of the act was to protect the morals of the child, that the Legislature employed apt words to describe the offense, * * * it is evident that the acts constituting the offense mean such as the common sense of society would regard as indecent and improper. *People v. Hicks,* 98 Mich. 86, 56 N.W. 1102. True, what shall be regarded as 'immodest, immoral and indecent liberties' is not specified with particularity, but that is not necessary. The indelicacy of the subject forbids it. The common sense of the community, as well as the sense of decency, propriety, and morality which people generally entertain, is sufficient to apply the statute to each particular case, and point out unmistakably what particular conduct is rendered criminal by it. *State v. Millard,* 18 Vt. 574, 46 Am. Dec. 170. * * * " *Dekelt v. People,* 44 Colo. 525, 99 P. 330, 331–332 (1909). This position was reiterated in *Gallegos v. People,* 176 Colo. 191, 489 P.2d 1301 (1971).

We do not analyze a vagueness challenge in a vacuum but rather in the context of the statute in which the language is incorporated. *State v. Foster,* 91 Wash.2d 466, 589 P.2d 789, 795 (1979).

" * * * Due process does not require that this statute, with its beneficent purpose, spell out in exact words what constitutes the conduct made punishable." *Millhollan v. State,* 221 Ga. 165, 143 S.E.2d 730, 733 (1965); *Anderson v. State,* Alaska, 562 P.2d 351 (1977).

" * * * Although the language of the statute is broad and the prohibited behavior is very general, this seems *necessary* in the nature of its subject matter. * * " (Emphasis not supplied.) *People v. Beaugez,* 232 Cal.App.2d 650, 43 Cal.Rptr. 28, 33 (1965).

" * * * The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. We agree with the Kentucky court when it said: 'We believe that citizens who desire to obey the statute will have no difficulty in understanding it . . .' [Citation.]" *Colten v. Commonwealth of Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

## PAROLE CONDITION

■ Appellant was sentenced pursuant to the provisions of § 7–13–601, W.S.1977, pertaining to persons convicted of certain sex crimes.[4] The trial court had the alter-

4. Provisions pertinent to our summary thereof are:

"If it shall appear to the court from said written report that the conduct of the person examined in accordance with section 7–349, Wyoming Statutes 1957 [§ 7–13–602], (hereinafter called 'the convicted person') has in the past been characterized by a pattern of repetitive or compulsive behavior, accompanied by either violence, or an age disparity from which it shall appear that at the time of the crime for which the defendant was convicted or to which a plea of guilty was entered, the victim was under the age of fifteen (15) years and the convicted person was an adult aggressor; then the court may enter its order in accordance with section 7–352, Wyoming Statutes 1957 [§ 7–13–605] or sentence such convicted person to the state penitentiary for a period of time not greater than

native of sentencing appellant to the penitentiary for a period of time as provided for the crime for which convicted (which was here done) or to sentence him to receive psychiatric treatment either as an outpatient while on probation or in a hospital or 'other institution. If appellant were sentenced to receive psychiatric treatment as an outpatient while on probation and if he violated the terms of such, the court could sentence him to the penitentiary or to receive the psychiatric treatment in a hospital or other institution. If the sentence was to a hospital or other institution for psychiatric treatment, the court could release appellant "under parole supervision" after review of the required reports from the superintendent of the hospital or other institution or it could sentence him to the penitentiary.

The procedure does not empower the court to condition parole after a sentence to the penitentiary, and appellee-State so concedes. However, appellee asserts such to be "an inherent power of the district courts." We do not agree. The courts can impose only those sentences as authorized by the legislature.

"The power to determine what acts shall constitute crimes, and what acts shall not, and to prescribe punishment for acts prohibited belongs to the legislative branch of government. This power is said to be inherent in the state legislature and it is also comprehended in the general grant of legislative power contained in the state constitution. The power is exclusive and is not shared by the courts. So long as constitutional prohibitions are not in-

the maximum provided by law for the crime of which such person was convicted or to which a plea of guilty was entered." Section 7–13–604, W.S.1977.

"The court may place such convicted person on probation, with the requirement, as one (1) of the conditions of such probation, that he or she receive outpatient psychiatric treatment, at the convicted person's own expense, in the manner and at the place to be prescribed by the court in each individual case; or such convicted person may be committed by the court for treatment in a hospital or other institution designated by the court, either within or without the state of Wyoming, including the Wyoming state hospital at Evanston. Upon release from such hospital, or other institution, the convicted person shall be subject to parole supervision or the court at its discretion may enter orders of commitment to the state penitentiary specifying the minimum or maximum periods a convicted person may be confined subject to those limitations set forth in section 7–356, Wyoming Statutes 1957 [§ 7–13–609]." Section 7–13–605, W.S.1977.

"It shall be the duty of the chief executive officer of any hospital or other institution wherein convicted persons are confined pursuant to sections 5 [§ 7–13–605] and 7 [§ 7–13–607] of this act, to report in writing at least semi-annually, during the period of such confinement, to the district court so committing such convicted person, concerning the physical and mental condition of such convicted person, with a recommendation as to his or her continued confinement, or consideration for release on parole by the judge of said court. Any convicted person so committed pursuant to sections 5 and 7 of this

act may be released by the judge of the committing court under parole supervision, when it shall appear to the satisfaction of said district judge, after affirmative recommendation by the chief executive officer aforesaid, that such convicted person is capable of making an acceptable social adjustment in the community." Section 7–13–610, W.S.1977.

"If it shall appear to the court from the report of the mental and physical examination of such convicted person, made pursuant to sections 1 [§ 7–13–601] and 2 [§ 7–13–602] of this act, that such person's conduct has not been characterized by a pattern of repetitive, compulsive behavior, and neither violence nor age disparity was indicated, as provided in section 4 of this act [§ 7–13–604], then the court shall impose sentence upon such convicted person in the manner heretofore or hereafter provided by law." Section 7–13–612, W.S.1977.

"In the event that any convicted person placed on probation pursuant to section 5 of this act [§ 7–13–605] shall violate the conditions of such probation, and such violation shall be established to the satisfaction of the judge or the district court which placed such person on probation, then the court may either commit such person for treatment in a hospital or other institution in accordance with section 5 [§ 7–13–605] or 7 [§ 7–13–607] of this act, or may impose sentence against such person in the manner and to the same extent as though the passing of sentence to a penal or correctional institution had not been delayed and such person had not been placed on probation, whichever the court deems best in each individual case." Section 7–13–614, W.S.1977.

fringed, the will of the legislature in this respect is absolute. But the power to define crimes is of course subject to the limitations contained in state and federal constitutions." 21 Am.Jur.2d Criminal Law § 14 (1965). See 22 C.J.S. Criminal Law § 13 (1961). Art. 3, § 1 of the Wyoming Constitution vests the legislative power of the state in "the legislature of the State of Wyoming," and Art. 2, § 1 of that constitution prohibits the exercise of the powers of one department (legislative, executive and judicial) of the government by another department of it.

"It must be kept in mind that the court has no inherent right to grant probation. The authority over sentencing comes from the legislature. * * * " *Hicklin v. State,* Wyo., 535 P.2d 743, 752 (1975).

As previously indicated, the power to grant parole after incarceration was not granted to the court in the enactment pertaining to "Persons Convicted of Certain Sex Crimes" and general parole power has been given by the legislature to the Board of Parole. Such parole is defined by the legislature as permission "to leave the confines of the institution in which he is confined * * * under sentence ordered by any district court of this state * * * ." Section 7–13–402, W.S.1977.

The legislature further provided that: " * * * In granting a parole the board shall fix such terms and conditions as it deems proper to govern the conduct of the parolee while the parole is in effect; such terms and conditions may be special in each case, or they may be prescribed by general rules and regulations of the board, or both. * * * " Section 7–13–402(a), W.S.1977.

■ Such power as placed by the legislature in the Board of Parole is inconsistent with the exercise by the court of parole power *over an individual confined in the institution.* The legislature has prescribed specific punishment which may be imposed by the courts for violation of the respective crimes, usually in terms of a minimum and maximum period of incarceration. In §§ 7–13–201, et seq., W.S.1977, it provided generally for the imposition of sentences and the granting of probation by the courts. Probation is authorized either with a suspension of the imposition of sentence or after sentence but with suspension of the execution of it. Sections 7–13–203 and 7–13–301, W.S.1977.

■ It may be possible to read into the language of § 7–13–301, W.S.1977, a potential for a court to grant parole after incarceration. This section reads:

"After conviction or plea of guilty for any offense, except crimes punishable by death or life imprisonment, the court may suspend the imposition of sentence, or may suspend the execution of all *or a part of* a sentence and may also place the defendant on probation or may impose a fine applicable to the offense *and also place the defendant on probation.* With the consent of a defendant charged with a crime, except a crime punishable by death or life imprisonment, the court may suspend trial and place such defendant on probation." (Emphasis supplied.)

The emphasized portion of the foregoing could be said to authorize suspension of only a part of the execution of the sentence, and after incarceration for the part of the sentence not suspended, to grant parole. However, such is not thereby authorized for two reasons: One, § 7–13–301 was enacted in 1969. The Board of Parole was established and given parole power in 1971. The 1971 act repeals by implication the portion of the 1969 act pertaining to the authority of the court to suspend execution of a part of a sentence and also place the defendant on probation. Although repeals by implication are not favored,

" * * * where there is a manifest legislative intent that a subsequent general statute shall have universal application, it repeals by implication earlier laws dealing with only a small part of the same subject. [Citations.]" *Longacre v. State,* Wyo., 448 P.2d 832, 834 (1968).

And see *Hutchins v. State,* Wyo., 483 P.2d 519 (1971). If the parole is mandated by

the court at a specific time after incarceration, the time, conditions, etc. for parole are already determined, and there is no need for the Board of Parole to concern itself with a consideration of the inmate's attitude, progress, etc. since incarceration as well as the consideration of the several other factors involved. In other words, there is no consideration of whether or not reformation to any degree has been accomplished by the sentence. This is contrary to the overall objective and intent of the legislature as evidenced by parole enactments taken as a whole. As a matter of fact, the policy of the Board of Parole has been to refuse to consider board action for any inmate for whom the court has directed parole of a certain time or for whom it has directed other specific post-incarceration action. The inmate is thus possibly prevented from receiving benefits available to other inmates. In the same fashion as the board recognizes the authority of the court to limit the board's discretion as to parole by setting a very small interval between the minimum and maximum terms of sentence or to expand such discretion by setting a large interval,[5] so too it considers court direction for post-incarceration actions as completely replacing board discretion as to action for the particular inmate. This result is contrary to the "manifest intent of the legislature" that the general parole "statute have universal application." *Longacre v. State,* supra, 448 P.2d at 834.

▮▮ Second, the use of the word "probation" in § 7–13–301, W.S.1977 to designate the status of the convicted person after serving part of a sentence is conflicting and inconsistent by definition, thus reflecting an intention of the legislature to not authorize court ordered supervision and conditions on release after incarceration. "Parole" is defined in § 7–13–402, W.S.1977, as permission "to leave the confines of the institution." [6]

" * * * '[P]robation' ordinarily negatives the implication that a state prison sentence was imposed or served." *Hayward v. Watsonville Register-Pajaronian and Sun,* 265 Cal.App.2d 255, 71 Cal.Rptr. 295, 300 (1968).

" * * * 'Probation is a release by the court before sentence has commenced.' [Citation.]" *State v. Gates,* 230 Ore. 84, 368 P.2d 605, 608 (1962).

" * * * Probation relates to judicial action taken before the prison door is closed, whereas parole relates to executive action taken after the door has closed on a convict. * * * " *State v. Hewett,* 270 N.C. 348, 154 S.E.2d 476, 479 (1967).

When a word has a well-settled meaning in law at the time of its usage, its use by the legislature will be so understood unless a different meaning is unmistakably intended. *Title Guaranty Company of Wyoming, Inc. v. Belt,* Wyo., 539 P.2d 357 (1975); *Johnson v. Safeway Stores, Inc.,* Wyo., 568 P.2d 908 (1977).

Accordingly, the trial court did not have the power to impose parole or other post-incarceration conditions in the sentence.

▮▮▮▮ If part of a divisible sentence is illegal or improper, we may modify it by vacating or striking that part which is illegal and improper and affirming the balance. *State v. Feilen,* 70 Wash. 65, 126 P. 75 (1912); *Wahl v. State,* 39 Ariz. 62, 3 P.2d 1052 (1931). In this instance, however, we note that the trial court gave the parole board considerable discretion in the time in which parole could be granted and we note the exercise of the discretion was conditioned on a mandatory hospitalization at the time of parole. Accordingly, the sentence may not be divisible. The trial court might have imposed an entirely different sentence had it known that the mandatory hospitalization would not be required.

---

**5.** Section 7–13–402, W.S.1977, prohibits the grant of parole by the board until after the minimum sentence has been served.

**6.** Section 7–13–203, W.S.1977, which was probably superseded by § 7–13–301, W.S.1977, refers to release on specified conditions after

suspension of imposition of sentence as "parole." Since there can be no incarceration in connection with the status of the defendant under the statute, the status is properly "probation."

Therefore, we affirm the conviction and remand the case for resentencing of appellant in accordance with the foregoing.