**Thomas Ray KELLER,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 87–16.

Supreme Court of Wyoming.

March 31, 1989.

---

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, Martin J. McClain, Deputy State Public Defender, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Sylvia L. Hackl, Sr. Asst. Atty. Gen., Bret Berger Strand, Legal Intern, for appellee.

Before CARDINE, C.J., THOMAS, URBIGKIT and MACY, JJ., and BROWN, J., Retired.

THOMAS, Justice.

The main question in this appeal is whether the court erred in refusing to give to the jury a requested lesser included offense instruction on the offense of criminal entry in a trial in which Thomas Ray Keller (Keller) was convicted of three counts of burglary. Other issues are presented relating to Keller's sentence. These include challenges to the authority of the court to order Keller to attend therapeutic programs at the penitentiary, to order Keller to pay restitution in an amount to be determined at a later time, and to order Keller to repay the office of the public defender for legal services. We conclude that the trial court did err in refusing to give a lesser included offense instruction as to

one of the counts of burglary, and we reverse the judgment on Count III for that reason. We also are persuaded that the judgment and sentence did exceed the authority of the trial court, and we declare the judgment and sentence void with respect to the aspects attacked by Keller.

In his Brief of Appellant, Keller sets forth these issues:

"1. Whether the Trial Court's decision not to instruct the jury on lesser-included offenses was error.

"2. Whether the provision in the District Court's sentence requiring Appellant to attend therapeutic programs at the Wyoming State Penitentiary must be stricken as in excess of the District Court's jurisdiction.

"3. Whether the district court exceeded its jurisdiction when it ordered restitution in an amount to be determined.

"4. Whether the District Court erred in ordering reimbursement to the State for the services of the Public Defender's office."

In the Brief of Appellee, the State identifies the issues in this way:

"1. Whether the trial court's decision not to instruct the jury on lesser-included offenses was error?

"2. Whether the district court exceeded its jurisdiction in recommending to the Board of Parole that the appellant's attendance of therapeutic programs ordered by the Wyoming State Penitentiary be considered in determining if the appellant should be paroled?

"3. Whether the district court erred when it ordered restitution in an amount to be determined?

"4. Whether the district court erred in ordering reimbursement to the state for services of the Public Defender's office without first determining the appellant's ability to pay?"

Keller initially was charged with four counts of burglary in violation of § 6-3-301(a), W.S.1977 (June 1983 Repl.). That statute provides:

"(a) A person is guilty of burglary if, without authority, he enters or remains in a building, occupied structure or vehicle, or separately secured or occupied portion thereof, with intent to commit larceny or a felony therein."

Those charges were:

| COUNT | PLACE | DATE |
| --- | --- | --- |
| I | Super Wash Car Wash | June 6, 1985 |
| II | Ford Store | June 7, 1985 |
| III | Broadway Cleaners | June 12, 1985 |
| IV | White Eagle Motors | Dec. 28, 1985 |

All of these business establishments were located in Rock Springs.

After originally entering a plea of not guilty to each of these counts, Keller made an arrangement pursuant to which he entered a plea of guilty to the lesser charge of criminal entry as to the alleged burglary of the Broadway Cleaners. That count was dismissed from the case, and an amended information was filed incorporating the three remaining counts. Keller then went to trial on those charges of burglary. After trading a plea of guilty to criminal entry for the charge of burglary at the Broadway Cleaners, Keller was interested in obtaining the same opportunity in front of the jury. His initial claim of error is premised upon the refusal of the district court to instruct the jury on the lesser included offense of criminal entry.

An evaluation of this contention requires a summary of the evidence. The only evidence presented at the trial was offered by the prosecution. Testimony of the witnesses established that, on June 7, 1985, the Rock Springs Police Department was advised of two burglaries which occurred during the late night of June 6 and early morning of June 7, 1985. The first was reported by the manager of the Super Wash Car Wash who had discovered, when he arrived at the premises, that the door jamb and lock on the door to the office building had been broken. The doors to a cabinet inside the building were open, and the manager discovered upon discussion with an employee that $62, which had been left in the cabinet the evening before, was missing.

The report of the second burglary was from the Ford Store. At about 6:30 A.M., an employee discovered that a plexiglass window on the upper portion of a garage door had been shattered. An examination

of the interior of the building disclosed that one of their cars had been moved to a location near a garage door and that the keys to the car were still in the ignition. Further investigation disclosed that the keys to a cash register and a soda machine dispenser were missing from where they normally were kept. An employee at a store next door advised the police that he had found a set of keys in the flower garden of that business, and a later inspection of the flower garden revealed still another set of keys. The two sets of keys found were the missing cash register and soda dispensing machine keys. Pieces of the broken plexiglass window were examined for fingerprints, and Keller's fingerprints were found on the pieces of plexiglass.

More than six months later, a silent alarm was activated at White Eagle Motors at 4:10 A.M. on December 28, 1985. Officers who responded to the alarm discovered a broken window, and one officer was stationed under the window to prevent any person who might still be in the premises from escaping. The officers then notified the owner of the business and asked him to come to White Eagle Motors. When he arrived, the owner observed the broken window and saw a hydraulic jack, which normally was kept inside the building, outside the building. The owner then unlocked the door and, once he had deactivated the alarm, he and the officers began an examination of the premises. One officer observed a person, identified as Keller, lying underneath a pickup truck near the back part of the building. When the officers ordered Keller to come out from underneath the truck, Keller did not respond and had to be physically removed from beneath the truck. The police then arrested Keller and took him to the police station. Further investigation resulted in a determination that nothing had been stolen although the doors to a file cabinet were found open, and papers which had been in the cabinet had been moved.

One officer testified that, as Keller was being physically pulled from under the truck, Keller stated, "All right, all right, I'll get up." The officer testified that Keller appeared to have been "passed out" with no movement observable, but that he did not detect any odor of alcohol. When the police attempted to interview Keller, not long after he was taken to the police station, at approximately 4:40 A.M., they were unable to question him because Keller was unresponsive and apparently unconscious. A later attempt to interview him was made at about 2:15 P.M., and Keller then agreed to talk to the police. A cassette recorder was used but, due to a malfunction of the recorder, only Keller's waiver of his Miranda rights was recorded. When the investigator discovered that he had no record of the interview, he asked Keller to repeat the statement, but Keller refused.

The investigator's testimony about the interview included Keller's statement that he remembered being caught sleeping in a building but that he did not remember "much else" because he had been "pretty drunk" at the time. The officer also testified that Keller told him that a friend of Keller's had broken the window at White Eagle Motors; both he and the friend then entered the building; after they went inside, Keller did not know what happened to his friend; and Keller "simply laid down underneath the truck and went to sleep." When asked about Keller's statements concerning the burglaries of the Super Wash Car Wash and the Ford Store, the officer explained that Keller told him he had entered both buildings "looking for money," but he had left without taking anything because he didn't find anything. In the course of the investigation, a wallet was discovered that contained identification which indicated it belonged to the friend Keller had named, but efforts to locate that person were not successful.

At the instruction conference, the court received requested instructions and heard objections to proposed instructions. Counsel for Keller offered an instruction on the lesser included offense of criminal entry, to which the State objected. The argument of the defense was that if the conclusion of intoxication, either by drugs or alcohol, were reached, then the specific intent to

commit burglary might not be found, in which event the jury should be permitted to consider the lesser included offense of criminal entry. The State argued in response that there simply was no evidence to justify the position taken by the defendant. The prosecution contended that, in his statement, Keller essentially had admitted the burglaries of the Super Wash Car Wash and the Ford Store, and that there was no reason to distinguish the situation at White Eagle Motors. The State's position was that the request for the instruction on a lesser included offense simply was not supported by credible evidence, and the court did refuse to give the jury the instruction on the lesser included offense. An instruction was given, however, relating to the effect of intoxication on the element of specific intent. The jury returned a verdict of guilty on each of the three counts of burglary.

■ With respect to Keller's claim that the court erred in refusing to give his requested instruction on the lesser included offense, the State, relying on *Morris v. State*, 644 P.2d 170 (Wyo.1982), contends that we must review the issue under the doctrine of plain error. The thrust of the argument is that, because the defense failed to object to the court's ruling that it would not give the instruction, it failed to preserve the error on the record. In *Morris*, we held that, even though counsel had presented a proposed instruction in writing prior to trial, had renewed the request for the instruction, had argued for it at the instruction conference, and counsel's argument was set out on the instruction, the failure to object to the refusal to give the instruction made any error with respect to the refusal to give it reviewable only under the doctrine of plain error. *Morris* can be distinguished from this case because, in that case, the court was not concerned with an instruction that must be given if the evidence supports it. In Keller's situation, the giving of an instruction on a lesser included offense, like a theory of the case instruction, is required if the record justifies it.

More importantly, insisting upon a specific objection in this case is not compatible with the policy of the requirement articulated in *Morris*. The policy justification for a specific objection is that the trial court should be apprised of the nature and grounds for the party's request so that any error can be corrected prior to any prejudice attaching to giving or refusing to give an instruction. *Grable v. State*, 649 P.2d 663 (Wyo.1982). Cf. *Morris*, 644 P.2d 170; *Harries v. State*, 650 P.2d 273 (Wyo.1982). In support of this policy, Rule 31, W.R. Cr.P., which adopts Rule 51, W.R.C.P., requires not only an objection, but a specific objection with respect to the giving or refusal of proposed instructions. *Grable*. The cases which are relied upon in *Morris* do not hold that a party has not complied with the requirement of a specific objection when he has presented both a proposed instruction and argument with respect to that instruction simply because of a failure to utter the words "I object" after the court's ruling. Such a requirement would not advance the policy for the rule, and we conclude that it must be inappropriate. In this instance, counsel sufficiently explained to the court that Keller wanted the instruction on the lesser included offense, and he justified that request with appropriate argument. We review the refusal to give it without invoking the doctrine of plain error.

Although the rule with respect to an instruction on a lesser included offense was developed at common law to assist the prosecution when its evidence fell short of establishing some element of the charge, we have said that a defendant also is entitled to the benefit of the rule. *Griego v. State*, 761 P.2d 973 (Wyo.1988); *State v. Selig*, 635 P.2d 786 (Wyo.1981). See also *Seeley v. State*, 715 P.2d 232 (Wyo.1986); C. Wright, Federal Practice and Procedure: Criminal 2d § 515 at 20–21 (1982); 8A J. Moore Federal Practice ¶ 31.03[2] at 31–15 (1985). Our rule is clear that an instruction on a lesser included offense must be presented to the jury if (1) a proper request is made; (2) the elements of the lesser included offense are identical to some of the elements of the greater offense; (3)

there is some evidence that would justify conviction of the lesser included offense; (4) the proof on the element, or elements, differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense; and (5) mutuality exists such that the lesser included offense charge can be demanded by either the prosecution or the defense. *Griego, Eatherton v. State*, 761 P.2d 91 (Wyo.1988); *Miller v. State*, 755 P.2d 855 (Wyo.1988); *Jahnke v. State*, 692 P.2d 911 (1984); *Selig.*

▪ As these criteria are applied to this case, we hold that the instruction should have been given. Section 6–3–302(a), W.S. 1977 (June 1983 Repl.), provided:

"(a) A person is guilty of criminal entry if, without authority, he knowingly enters a building, occupied structure, vehicle or cargo portion of a truck or trailer, or a separately secured or occupied portion of those enclosures.

"(b) It is an affirmative defense to prosecution under this section that:

"(i) The entry was made because of a mistake of fact or to preserve life or property in an emergency;

"(ii) The enclosure was abandoned;

"(iii) The enclosure was at the time open to the public and the person complied with all lawful conditions imposed on access to or remaining in the enclosure; or

"(iv) The person reasonably believed that the owner of the enclosure, or other person empowered to license access to the enclosure, would have authorized him to enter.

"(c) Criminal entry is a misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both."

We previously have held that the essential difference between the crime of burglary and the crime of criminal trespass is the element of intent to steal or to commit a felony. *Eatherton; Mirich v. State*, 593 P.2d 590 (Wyo.1979). The crime of criminal entry is substantially identical to the crime of criminal trespass discussed in *Mi-*

*rich.* Keller's counsel at trial conceded all of the elements of burglary except intent. It would have been appropriate for either the prosecution or the defense to have requested the lesser included offense instruction, which satisfies the requirement of mutuality. The court was required to instruct the jury on the lesser included offense of criminal entry if there was some evidence that would justify the jury in concluding that the element of intent to commit larceny or a felony was not satisfied.

In making the determination as to the evidence necessary to invoke a requirement for an instruction on the lesser included offense, we have relied upon cases addressing the quantum of evidence necessary to require the giving of an instruction on a theory of the case. In *Jahnke*, 692 P.2d at 920, the court relied upon *Selig*, 635 P.2d 786, and *Goodman v. State*, 573 P.2d 400 (Wyo.1977), in stating:

" * * * [I]f there is any evidence which would permit the jury rationally to acquit a defendant of the greater offense and convict of the lesser upon proper request the trial court must instruct on the lesser offense."

In *Selig*, the court quoted from *Goodman*, 573 P.2d at 409, in alluding to the quantum of evidence necessary to justify a jury in finding a defendant guilty of the lesser included offense:

" 'While it has been held that in order to warrant giving an instruction, there must be some "appreciable" or "substantial" evidence supporting it, since as appears in § 11–38, supra, the weight and sufficiency of the evidence to establish a fact in issue are a question for the jury, *it is generally recognized that any evidence which will authorize the jury to find on it, although in the opinion of the court it may be weak, inconclusive, or unworthy of belief, is sufficient to justify an instruction on the issue raised by such evidence, and even positive testimony is not required, for it is sufficient if the fact in issue reasonably may be inferred from circumstances proved.* However, in order to warrant giving an instruction, the evidence should

be sufficient fairly to raise the question involved therein.' (Emphasis in original.) *Goodman v. State,* Wyo., 573 P.2d 400, 409 (1977), quoting from 23A C.J.S. *Criminal Law* § 1313." *Selig,* 635 P.2d at 791.

This explanation is consistent with the proposition that, in reaching a determination as to whether an instruction in favor of the accused should be given, the court should view the evidence in the light most favorable to the accused. See *Best v. State,* 736 P.2d 739 (Wyo.1987), *Stapleman v. State,* 680 P.2d 73 (Wyo.1984); *Goodman.* If, however, there is no evidence from which a reasonable juror could find a defendant guilty of the lesser included offense, the requested instruction should not be given. *Carey v. State,* 715 P.2d 244 (Wyo.1986). In the absence of such evidence, the lesser included offense instruction simply creates a potential for conjecture and an invitation to the jury to compromise. *Amin v. State,* 694 P.2d 119 (Wyo.1985); *Oldham v. State,* 534 P.2d 107 (Wyo.1975). See also *Stamper v. State,* 662 P.2d 82 (Wyo.1983); *Sparf v. United States,* 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895).

We perceive a difference between the first two counts and the third count in the amended information. Adopting an examination of the evidence in accordance with the foregoing standards, an instruction on the lesser included offense of criminal entry was required with respect to the charged burglary at White Eagle Motors. In the light most favorable to Keller, that evidence indicates that Keller, while in a drunken condition, went to White Eagle Motors with a friend; the friend broke the window to the building; and Keller followed him inside. After they entered the building, the friend disappeared, and Keller crawled under a truck and passed out. The police then discovered Keller passed out beneath the truck in the back of the building. The jury could infer from these facts that Keller was too intoxicated to form the specific intent requisite for a conviction of the charge of burglary, but still could decide that he had committed the offense of unlawful entry. See *Eatherton,* 761 P.2d

91. It is the function of the jury to determine the weight to be given the evidence. *Kavanaugh and Markland v. State,* 769 P.2d 908 (Wyo.1989); *Jahnke,* 692 P.2d 911. Further, we cannot avoid cognizance of the antithetical approach taken with respect to the fact of Keller's intoxication. The court did instruct the jury as to the effect of voluntary intoxication upon his ability to form a specific intent. The giving of that instruction assumed that there was sufficient evidence to permit the jury to find that Keller was intoxicated.

■ There was an entirely different situation with respect to the charged burglaries of Super Wash Car Wash and Ford Store. As to those counts, the court correctly refused to give the instruction on the lesser included offense. Keller admitted all of the elements of burglary with respect to those two charged crimes. There was no evidence from which a jury rationally could conclude that Keller had any intent other than to commit larceny when he broke into those buildings. Keller's advice to the investigator that "he was usually pretty drunk when he did this kind of thing" relates to other buildings which he could not recall breaking into. The only evidence with respect to Count I and Count II was that contained in Keller's admission that he had the requisite intent when he committed the burglaries. As to those two counts, the ruling of the trial court with respect to the instruction on the lesser included offense was correct. *People v. Fryer,* 136 A.D.2d 936, 524 N.Y.S.2d 899 (1988). See *Driscoll v. United States,* 356 F.2d 324 (1st Cir.1956), vacated on other grounds sub nom. *Piccoli v. United States,* 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1967).

We conclude that the conviction as to Count III must be reversed. *Eatherton,* 761 P.2d 91; *Jahnke,* 692 P.2d 911. There was no error as to the convictions on Counts I and II. It would be appropriate to remand Count III for a further trial, but we know that the only sentence imposed was concurrent with the sentences imposed on Counts I and II. Consequently, there does not appear to be any useful purpose in

remanding Count III to the district court for a further trial. We deem it appropriate not to do so and content ourselves with a simple reversal on that count.

We turn then to the claims of error asserted by Keller with respect to the sentence that was imposed. After the jury returned the verdicts of guilty, the court directed that a psychiatric evaluation of Keller be accomplished prior to sentencing. At the sentencing hearing which then was held, the district judge advised Keller that he had considered probation but that Keller's record did not warrant it. Keller was sentenced to a term of not less than nine nor more than ten years on each of the three counts with the provision, as had been noted, that those sentences be served concurrently. The judgment and sentence also required Keller to pay restitution "in an amount to be determined." He was required to pay the statutory surcharge of $25, and the court also ordered that he pay $500 in restitution to the State of Wyoming for the services of the public defender. In addition, Keller was required to attend therapeutic programs at the Wyoming State Penitentiary with the oral advice that "your refusal will result in the recommendation that you serve your maximum sentence." Keller now contends that the district court exceeded its jurisdiction with respect to sentencing by ordering him to attend therapeutic programs at the penitentiary, requiring restitution without setting an amount, and providing that he should repay the office of the public defender for legal services.

The authority to prescribe punishment for criminal offenses is vested in the legislative department of state government, and courts can impose only those sentences which the legislature has authorized. *Cook v. State*, 710 P.2d 824 (Wyo.1985); *Williams v. State*, 692 P.2d 233 (Wyo. 1984); *Schuler v. State*, 668 P.2d 1333 (Wyo.1983); *Sorenson v. State*, 604 P.2d 1031 (Wyo.1979). At the time that Keller was sentenced, the authority of a court to sentence was set forth in §§ 7–13–101 to –306, W.S.1977, as they had been amended by the provisions found in the 1986 supplement, since replaced by §§ 7–13–101 to –307, W.S.1977. The only authority to impose sentence in Keller's case is provided in those statutes.

■ The statutes are silent as to any authority to direct Keller to attend therapeutic programs. Only one section arguably could support such a grant of authority. That is § 7–13–203, W.S.1977 (Cum. Supp.1986), which we held to have been repealed by implication when the board of parole was established in 1971. *Sorenson*. We held in *Sorenson* that the sentencing court was without power to impose any post incarceration conditions because the legislature had delegated that authority to the board of parole. A court that desires to retain jurisdiction with respect to a convicted defendant can do so only by a sentence of probation or a suspended sentence. Sections 7–13–301 to –306, W.S.1977 (Cum. Supp.1986); *Sorenson*. See also §§ 7–13–201 to –307, W.S.1977 (Cum.Supp.1987), which now omit the provision previously included in § 7–13–203, resolving legislatively the same question addressed in *Sorenson*. It is clear that in this instance the district court was without authority to require Keller to attend any therapeutic programs at the penitentiary.

The State of Wyoming agrees that the district court had no such authority, but it contends that it could make a recommendation that Keller attend therapeutic programs. In making this argument, the State recognizes that, although the judgment and sentence which was entered states that Keller is to attend therapeutic programs, the transcript of the sentencing hearing contains this language:

"You'll participate in all therapeutic programs ordered, and your refusal will result in the recommendation that you serve your maximum sentence."

The State then relies upon *Lane v. State*, 663 P.2d 175 (Wyo.1983), and *Fullmer v. Meacham*, 387 P.2d 1007 (Wyo.1964), to explain that the oral pronouncement controls when the written judgment and sentence conflict. In those cases, the court was concerned with the correction of clerical errors and held that a trial court not

only had the authority to correct a judgment and sentence to make it conform to the oral pronouncement, but it had a duty to do so. We do not perceive that the distinction relied upon by the State demonstrates a clerical error in the judgment and sentence which can be corrected in this case. Instead, the comment at the hearing reveals that the trial court intended to exercise its influence with respect to Keller's sentence by recommending that he serve the maximum sentence unless he attended therapeutic programs. Our conclusion is that trial courts should not be encouraged to invade the prerogative of the executive branch with respect to prisoners at the state penitentiary and the manner in which their sentences are to be served and, consequently, we hold that the portion of the sentence requiring Keller to attend therapeutic programs must be set aside as an effort to include a condition in the sentence which the court had no authority to impose. *Williams,* 692 P.2d at 235 (quoting *Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947); *Dean v. State,* 668 P.2d 639 (Wyo.1983); *Sorenson.*

Section 7–13–109(b), W.S.1977 (Cum. Supp.1986), controlled the authority of the court to order restitution. That section provided:

> "At the time of sentencing a defendant for any misdemeanor or felony conviction, if the court desires to require restitution, the court shall fix a reasonable amount as restitution owed to each victim for pecuniary damages resulting from the defendant's criminal activity, and shall include its determination as a special finding in the judgment of conviction."

The statutory language does not provide authority to the trial court to order restitution in an amount to be determined at a later time. Keller notes that, while the board of parole has authority to order restitution by a convict as a condition of his parole, its authority consistently is limited to the amount set by the trial court at sentencing. Section 7–13–424, W.S.1977 (Cum.Supp.1986). This approach continues in the new statutory provisions in the criminal code. See §§ 7–19–103 and 7–13–421, W.S.1977.

■ The State of Wyoming concedes that the trial court exceeded its sentencing authority by ordering restitution without providing an amount, but the State urges that we remand the case to the trial court to set the appropriate amount. While in *Sorenson,* 604 P.2d 1031, the court did remand a case to the trial court for resentencing because the intention of the trial court could not be carried out in view of our conclusion that the sentencing court had acted in excess of its jurisdiction, the court in other cases simply has stricken the improper provision of a divisible sentence without remand. *Roose v. State,* 753 P.2d 574 (Wyo.1988), *Harley v. State,* 737 P.2d 750 (Wyo.1987). In *Lightly v. State,* 739 P.2d 1232 (Wyo.1987), the court remanded the case with a mandate to the trial court to delete the illegal aspect of the sentence. In this instance, the court deems it appropriate to simply strike the illegal provision of the sentence without remanding for resentencing.

■ As to the authority of the court to order reimbursement for legal services provided by the public defender's office, the State agrees with Keller's argument that the sentencing court erred by ordering reimbursement without first determining whether Keller had the ability to pay and making a finding in that regard. Section 7–1–112(c), W.S.1977, provided:

> "To the extent that a person covered by W.S. 7–9.20 [§ 7–1–110] is able to provide for an attorney, the other necessary services and facilities of representation, and court costs, the court may order him to provide for their payment."

We held in *Burke v. State,* 746 P.2d 852 (Wyo.1987), that any liability for amounts provided in this provision and the obligation for repayment constituted a civil debt and that those items were not proper elements in the sentencing proceedings. Cf. *Loomer v. State,* 768 P.2d 1042 (Wyo. 1989). We note a change in the 1987 revision of the Code of Criminal Procedure pursuant to which the court may order repayment for the services of the office of the public defender, to the extent that the person entitled to those services is able to provide some funds toward the cost of those services, and the court also may or-

der repayment for those services as a condition of probation. Section 7–6–106, W.S. 1977 (1987 Repl.). In addition, the legislature has provided for the office of the attorney general to bring an action within six months of the date of those services to recover payment or reimbursement. Section 7–6–108, W.S.1977 (1987 Repl.). Those changes in the law had no applicability here and, in the absence of the authority of the court to enter such payment without first determining Keller's ability to pay, that requirement of the sentence also must be stricken.

Keller's conviction and the judgment and sentence, except as modified, are affirmed with respect to Counts I and II of the Information. Those portions of the sentence which the court had no authority to impose are stricken, specifically the language:

> "That Defendant pay restitution in an amount to be determined, * * * pay $500 restitution to the State of Wyoming for the services of public defender. That Defendant attend therapeutic programs at the Wyoming State Penitentiary."

As to Count III, the judgment and sentence of the court is reversed without remand.